UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**CASE NO.: 09-20526-CIV-GOLD/MCALILEY**

KLAUS HOFMANN, and individual, JOHN
ALEXA, an individual; ELSA ALLRED, an
individual; STEVEN ANDERSON, an
individual; SHERI ANDERSON, an individual;
JOANN ANTRIM, an individual; BRUCE
ARNOLD, an individual, KATHLEEN
ARNOLD, an individual, KERRY ARNOLD,
an individual; JANA ARNOLD, an individual;
JUAN ARRENDONDO, an individual;
ALMA ARTHUR, an individual GARTH
ATWOOD, an individual; ARDITH ATWOOD,
an individual; LAURA BAKER, an individual;
ANNETTE BARNETT, an individual; DUANE
BARNEY, an individual; LAURA ANN
OLSEN BARNEY, an individual; JESSE
BEAL, an individual; KEVIN BELL, an
individual; ISABELLE BERROWS, an
individual; STEPHEN BIDDULPH, an
individual; ALVIN BRANDT, an individual;
IRENE BRANDT, an individual; HAROLD
BRONDUM, an individual, CAROL
BRONDUM, an individual, PATRICIA
LYNNE BROGAN, individual; JOHN
BROOKMAN, an individual; DAWNA
BROWER, an individual; RALPH BROWER,
an individual; LUIS BUSTOS, an individual;
BLANCA BUSTOS, an individual; SPENCER
CALL, an individual; MICHAEL CALLAHAN,
an individual; PETER CAMPBELL, an
individual, FRANCISCO CARMONA, an
individual; ANTONIO CARRENO, an
individual; FEBRONIA CARRENO, an
individual; GARY CASASSA, an individual;
ROBERT GARCIA CEJA, an individual;
JANIE CATLEDGE, an individual, JOSE
CENDEJAS, an individual; IRMA CENDEJAS,
an individual, KERRY CHRISTENSEN, an
individual; KATHIE CHRISTENSEN, an
individual; ROY COMBS, an individual,
CHERYL COMBS, and individual, MICHAEL
CONNER, an individual; MARIA CONNER,
an individual; DARREN COSSEY, an
individual; JENNIFER COSSEY, an individual;
KATHY COX, an individual; ELEANOR
CRAWFORD, an individual; BRENT
CROMER, an individual; NANCY DIELI, an
individual, PAUL DUNN, an individual;
RAMIRO EFRAIN SILVA BARRERA, an

EXHIBIT A

individual; JONATHAN ELBOM, an individual; DEANNA FAENZI-GLASS, an individual; JOANNE FALKOWSKI, an individual; CHARLES FELTON, an individual; JERONIMO FERNANDEZ, an individual MARIA FERNANDEZ, an individual; ALICE FITZWATER, an individual; GERTRUDE FLOOD, an individual; KERRY FLYNN, an individual; THOMAS FREESE, an individual, JOHN GARDINER, an individual; DIANE GARDINER, an individual; LEILA GERVAIS, an individual, CALIXTO GAYOSSO NEGRETE, an individual, VICTOR GIRON-ALVAREZ, an individual; ALBINO GONZALEZ, an individual; ANA GONZALEZ, an individual; JOSE GURROLA, an individual; SONIA GURROLA, an individual; BRIAN HALL, an individual; BRUCE HALL, an individual; TYLER HALL, an individual; RAYMOND HANDY, an individual; MEGHAN HANDY, an individual; CLAYTON HANSEN, an individual; ALYSON HANSEN, an individual; KAREN HANSEN, an individual; THOMAS HARP, an individual; RICK HAWKER, an individual; DENNIS HAWORTH, an individual; GARY HOUSE, an individual; TRENT HUDSON, an individual; VALERIE HUDSON, an individual; GILBERT IRUEGAS, an individual; CHERYL JACKS, an individual; KAY LYNN JACOBSON, an individual; ALAN JENKINS, an individual; GILBERT JING, an individual; FRANK JUNIO, an individual; RHONDA JUNIO, an individual; JOHN KASSEL, an individual; PATRICIA KASSEL, an individual; JOHN KAY, an individual; MICHAEL KELLER, and individual, LANA KELLER, an individual, VERNON KILLEN, an individual; SEAN KIRBY, an individual; CAROL KITT, an individual; ROBERT KITT, an individual; WARRENETTA LANE, an individual; JAMES LAWRENCE, an individual; WENDY LAWRENCE, an individual; RICHARD LEE, an individual; MAY LEE, an individual; WAYLAND LEE, an individual; BARBARA LEWIS, an individual; JOSE MANUEL LEYVA AQUILAR, an individual; EARL LINEBAUGH, an individual; RITA LINEBAUGH, an individual; ED LOOPER, an individual; EMILIA LOPEZ , and individual, ERIKA LOPEZ, an individual; FINDENCIO LOPEZ, an individual; TIBURCIO LOPEZ, an individual; DOUGLAS MADSEN, an individual;, CHERYL MADSEN, an individual;

EXHIBIT A

ISMAEL MANZO ALVAREZ, an individual;
ANGEL MARAVILLA, an individual;
PIEDAD MARAVILLA, an individual;
ANTHONY MARTIN, an individual; OZZIE
MARTIN, JR., an individual; WILLIAM
MATZ, an individual; ERICA MATZ, an
individual; KYLE MCARTHUR, an individual,
ALISA KRINSKY, an individual, PAUL
MCKENNA, an individual, CHERYL MEYER-
YOUNG, an individual, JOSE MILLAN, an
individual, EMMA MILLAN, an individual,
KAREL MOJZIS, an individual, SHIRLEY
MOORE, an individual, SHAUN K. MORRIS,
an individual, THOMAS MUSGROVE, an
individual, DON MYRES, an individual,
SHIRLEY MYRES, an individual, SERGIO
NAVARRO, an individual, ROSA NAVARRO,
an individual; DANIEL NIELSON, an
individual; WALTER NEWBAUM, an
individual; PAM NEWBAUM, an individual;
ROBERTA O'BRION, an individual; RUTH
O'HAGAN, an individual; JUAN OLVERA-
QUIJAS, an individual; ALBERTO OROZCO,
an individual; NORMA OROZCO, an
individual; LOREDANA ORTIZ, an individual;
MATTHEW PARENTE, an individual; JOSE
PENA, an individual; RAFAELA PENA, an
individual; FELIPE PEREZ, and individual,
MARIA PEREZ, an individual, GUADALUPE
PEREZ, an individual, MILTON PETTIT, an
individual; NOLAN PHILLIPS, an individual;
JENNIE PHILLIPS, an individual; CHARLES
PUCKETT, an individual; RANDY
PULLMAN, an individual; KEVIN RAINEY,
an individual; CINDY RAINEY, an individual;
LOWELL RICE, an individual; LINDA RICE,
an individual; CHARLYN ROBERTS, an
individual; ABEL ROCHA, an individual;
JUAN RODRIQUEZ, JR., an individual;
JUDITH ROGERS, an individual; JOE
ROSSITER, an individual; IMA JEAN
ROSSITER, an individual; JOSE LUIS
SANCHEZ,, an individual; SAMUEL
SANCHEZ, an individual; PETER SCOTT, and
individual, MIGUEL SILVA MEZA, an
individual; ANGELA SIMAS, an individual;
DANOU SISA-AT, an individual; JARED
SKELTON, an individual; JENNY SKELTON,
an individual; GLORIA SMITH, an individual;
JIM SNIEZKO, an individual; JAMES SOLTIS,
an individual; ROSALIND SOLTIS, an
individual; STANTON SOUTHWICK, an
individual; JILL SOUTHWICK, an individual;
MARTHA SPENCE an individual; YAZUKU

EXHIBIT A

STOCKDALE, an individual, WILLIAM SUBLETTE, an individual; LORI SUBLETTE, an individual; SAM SYLIPHONE, an individual; BILL TABBERT, an individual; LINDA TABBERT, an individual; STEVEN TANNER, an individual, KATHLEEN TANNER, an individual; MARIA TAPIA, an individual; BRUCE THOMAS, an individual; CHERYL THOMAS, an individual; GARY THOMPSON, an individual; KERRY THOMPSON, an individual; JOHN STEVE THOMPSON, an individual; SHARON THOMPSON, an individual, GORDON THORNTON, an individual, LUIS TORRES, an individual; MARIA TORRES, an individual; KENNY TRAN, an individual; CHRISTOL TRAN, an individual; PAULINE TRAUB, an individual; RUTH VALDEZ, an individual; JOHN VERKAIK, an individual; JENNIFER VERKAIK, an individual; MARCELA VILLAGOMEZ, an individual; KENNETH WALLACE, an individual; KAMILLE WALLACE, an individual; ROLF WALPOLE, an individual, TANGIE WALPOLE, an individual, JOHN WEBB, an individual; TERRY WEBB, an individual; HARVEY WEILER, an individual; MARLENE WEILER, an individual; KAY WILLIAMS, an individual; MARY LEE WILLIAMS, an individual; SANDA WIN, an individual; JEFFREY WOLF, an individual; LOLITA WOLF, an individual; KOK KYAN WONG, an individual; STEVEN YOUNG, an individual; REBECCA YOUNG, an individual; MARTIN ZAMUDIO, an individual; ESTELA ZAMUDIO, an individual; SUSAN ZANAYED, an individual;

Plaintiffs,

v.

EMI RESORTS, INC., a foreign corporation; EMI SUN VILLAGE, INC., a foreign corporation; HSV HOTELES DE OPERADORA,S.A., f/k/a EMI RESORTS MANAGEMENT, S.A., a foreign corporation; EMI RESORTS MANAGEMENT (S.V.G.), INC., a foreign corporation; EMI COFRESI DEVELOPMENTS, INC. a/k/a COFRESI DEVELOPMENTS, INC., a foreign corporation; KAHEBRAM, S.A., a foreign corporation; ELLIOTT MANAGEMENT, INC., a/k/a EMI MANAGEMENT,INC., a foreign corporation; INVERSIONES AVIATI, S.A., a

EXHIBIT A

foreign corporation; SUN VILLAGE JUAN DOLIO, INC., a foreign corporation; PROMOTORA XARA, S.A., a foreign corporation; ELLIOTT MICHES HOLDINGS, INC., a foreign corporation; INVERSIONES YUBASO, S.A., a foreign corporation; INMOBILIARIA LIRIOS DEL TROPICO, S.A., a foreign corporation; INMOBILIARIA CANADAIGUA, S.A., a foreign corporation; HSV HOLDINGS, S.A., a foreign corporation; DESARROLLOS MIRADOR COFRESI, S.A., a foreign corporation; TENEDORA HSV [BP], S.A., a foreign corporation; VILLA SANTA PONCA, S.A., a foreign corporation; DCS DOMINICAN CONSTRUCTION SERVICES, S.A., a foreign corporation; ELLIOTT REGENT HOLDINGS, INC., a foreign corporation; ELLIOTT TOSCANA HOLDINGS, INC., a foreign corporation; LANDMARK LENDING CORPORATION, a foreign corporation, 408 CUMBERLAND HOLDINGS, INC., a foreign corporation, BERTUS MANAGEMENT, INC., a foreign corporation, ORANGEVILLE RESERVATION SERVICES, LTD., a California corporation, CCW DOMINICANA, S.A., a foreign corporation; MPS LTD., S.A., a foreign corporation; COFRESCO HOLDINGS, INC., a foreign corporation; IMMOBILIARIA MONCEY, S.A., a foreign corporation; CELLWAVE NETWORKS, LTD., a foreign corporation, WWIN INTERNATIONAL LTD., a foreign corporation; MELLESINO C. POR A., a foreign corporation; TENEDORA WESSEX DOMINICANA, S.A., a foreign corporation; SUN VILLAGE CONTRUCCIONES, S.A., a foreign corporation; SUN VILLAGE JD HOLDING, INC., a Delaware corporation; 1211766 ALBERTA LTD., a foreign corporation; TRIPALMS REAL ESTATE INC., a foreign corporation; OCEAN PALMS REAL ESTATE (SVG) INC., a, foreign corporation; DE MARCHENA KALUCHE & ASOCIADOS, a foreign corporation; ENRIQUE DE MARCHENA, an individual; VICTOR CABRAL, an individual; N.W.N.GROUP, LLC, a/k/a NET WEALTH NAVIGATORS, LLC, a Nevada limited liability, company, MICHAEL LAWTER, an individual; TIPPY TAN LAWTER, an individual; FREDERICK ELLIOTT, an individual; and DEREK ELLIOTT, an individual,

EXHIBIT A

Defendants.

_____/

## SECOND AMENDED COMPLAINT AND JURY TRIAL DEMAND

Plaintiffs, KLAUS HOFMANN, an individual, JOHN ALEXA, an individual, ELSA ALLRED, an individual, STEVEN ANDERSON, an individual; SHERI ANDERSON, an individual, JOANN ANTRIM, an individual; BRUCE ARNOLD, an individual, KATHLEEN ARNOLD, an individual, KERRY ARNOLD, an individual; JANA ARNOLD, an individual; JUAN ARRENDONDO, an individual; ALMA ARTHUR, an individual, GARTH ATWOOD, an individual; ARDITH ATWOOD, an individual; LAURA BAKER, an individual; ANNETTE BARNETT, an individual; DUANE BARNEY, an individual; LAURA ANN OLSEN BARNEY, an individual; JESSE BEAL, an individual; KEVIN BELL, an individual; ISABELLE BERROWS, an individual; STEPHEN BIDDULPH, an individual; ALVIN BRANDT, an individual; IRENE BRANDT, an individual; PATRICIA LYNNE BROGAN, individual; HAROLD BRONDUM, an individual, CAROL BRONDUM, an individual, JOHN BROOKMAN, an individual; DAWNA BROWER, an individual; RALPH BROWER, an individual; LUIS BUSTOS, an individual; BLANCA BUSTOS, an individual; SPENCER CALL, an individual; MICHAEL CALLAHAN, an individual; PETER CAMPBELL, an individual, FRANCISCO CARMONA, an individual; ANTONIO CARRENO, an individual; FEBRONIA CARRENO, an individual; GARY CASASSA, an individual; ROBERT GARCIA CEJA, an individual; JANIE CATLEDGE, an individual, JOSE CENDEJAS, an individual; KERRY CHRISTENSEN, an individual; KATHIE CHRISTENSEN, an individual; ROY COMBS, an individual, CHERYL COMBS, an individual, MICHAEL CONNER, an individual; MARIA CONNER, an individual; DARREN COSSEY, an individual; JENNIFER COSSEY, an individual; KATHY COX, an individual; ELEANOR CRAWFORD, an individual; BRENT CROMER, an individual; NANCY DIELI, an individual; PAUL DUNN, an individual; RAMIRO EFRAIN SILVA BARRERA, an individual; JONATHAN ELBOM, an individual; DEANNA FAENZI-GLASS, an individual; JOANNE FALKOWSKI, an individual; CHARLES FELTON, an individual; JERONIMO FERNANDEZ, an individual; MARIA FERNANDEZ, an

EXHIBIT A

individual; ALICE FITZWATER, an individual; GERTRUDE FLOOD, an individual; KERRY FLYNN, an individual; THOMAS FREESE, an individual, JOHN GARDINER, an individual; DIANE GARDINER, an individual; LEILA GERVAIS, an individual, CALIXTO GAYOSSO NEGRETE, an individual, VICTOR GIRON-ALVAREZ, an individual; ALBINO GONZALEZ, an individual; ANA GONZALEZ, an individual; JOSE GURROLA, an individual; SONIA GURROLA, an individual; BRIAN HALL, an individual; BRUCE HALL, an individual; TYLER HALL, an individual; RAYMOND HANDY, an individual; MEGHAN HANDY, an individual; CLAYTON HANSEN, an individual; ALYSON HANSEN, an individual; KAREN HANSEN, an individual; THOMAS HARP, an individual; RICK HAWKER, an individual; DENNIS HAWORTH, an individual, GARY HOUSE, an individual; TRENT HUDSON, an individual; VALERIE HUDSON, an individual; GILBERT IRUEGAS, an individual; CHERYL JACKS, an individual; KAY LYNN JACOBSON, an individual; ALAN JENKINS, an individual; GILBERT JING, an individual; FRANK JUNIO, an individual; RHONDA JUNIO, an individual; JOHN KASSEL, an individual; PATRICIA KASSEL, an individual; JOHN KAY, an individual; MICHAEL KELLER, an individual, LANA KELLER, an individual, VERNON KILLEN, an individual; SEAN KIRBY, an individual; CAROL KITT, an individual; ROBERT KITT, an individual; WARRENETTA LANE, an individual; JAMES LAWRENCE, an individual; WENDY LAWRENCE, an individual; RICHARD LEE, an individual, MAY LEE, an individual, WAYLAND LEE, an individual, BARBARA LEWIS, an individual, JOSE MANUEL LEYVA AQUILAR, an individual, EARL LINEBAUGH, an individual, RITA LINEBAUGH, an individual, ED LOOPER, an individual, EMILIA LOPEZ, an individual, ERIKA LOPEZ, an individual, FINDENCIO LOPEZ, an individual, TIBURCIO LOPEZ, an individual, DOUGLAS MADSEN, an individual, CHERYL MADSEN, an individual, ISMAEL MANZO ALVAREZ, an individual, ANGEL MARAVILLA, an individual, PIEDAD MARAVILLA, an individual, ANTHONY MARTIN, an individual, OZZIE MARTIN, JR., an individual, WILLIAM MATZ, an individual, ERICA MATZ, an individual, KYLE MCARTHUR, an individual, ALISA KRINSKY, an individual, PAUL MCKENNA, an

EXHIBIT A

individual, CHERYL MEYER-YOUNG, an individual, JOSE MILLAN, an individual, EMMA MILLAN, an individual, KAREL MOJZIS, an individual, SHIRLEY MOORE, an individual, SHAUN K. MORRIS, an individual, THOMAS MUSGROVE, an individual, DON MYRES, an individual, SHIRLEY MYRES, an individual, SERGIO NAVARRO, an individual, ROSA NAVARRO, an individual, DANIEL NIELSON, an individual, WALTER NEWBAUM, an individual, PAM NEWBAUM, an individual, ROBERTA O'BRION, an individual, RUTH O'HAGAN, an individual, JUAN OLVERA-QUIJAS, an individual, ALBERTO OROZCO, an individual, NORMA OROZCO, an individual, LOREDANA ORTIZ, an individual, MATTHEW PARENTE, an individual, JOSE PENA, an individual, RAFAELA PENA, an individual, FELIPE PEREZ, an individual, MARIA PEREZ, an individual, GUADALUPE PEREZ, an individual, MILTON PETTIT, an individual, NOLAN PHILLIPS, an individual, JENNIE PHILLIPS, an individual, CHARLES PUCKETT, an individual, RANDY PULLMAN, an individual, KEVIN RAINEY, an individual, CINDY RAINEY, an individual, LOWELL RICE, an individual, LINDA RICE, an individual, CHARLYN ROBERTS, an individual, ABEL ROCHA, an individual, JUAN RODRIQUEZ, JR., an individual, JUDITH ROGERS, an individual, JOE ROSSITER, an individual, IMA JEAN ROSSITER, an individual, JEAN ROSSITER, an individual, JOSE LUIS SANCHEZ,, an individual,  SAMUEL SANCHEZ, an individual, PETER SCOTT, an individual, MIGUEL SILVA MEZA, an individual, ANGELA SIMAS, an individual, DANOU SISA-AT. an individual, JARED SKELTON, an individual, JENNY SKELTON, an individual, GLORIA SMITH, an individual, JIM SNIEZKO, an individual, JAMES SOLTIS, an individual, ROSALIND SOLTIS, an individual, STANTON SOUTHWICK, an individual, JILL SOUTHWICK, an individual, MARTHA SPENCE an individual, YASUKA STOCKDALE, an individual, WILLIAM SUBLETTE, an individual, LORI SUBLETTE, an individual, SAM SYLIPHONE, an individual, BILL TABBERT, an individual, LINDA TABBERT, an individual, STEVEN TANNER, an individual, KATHLEEN TANNER, an individual, MARIA TAPIA, an individual, BRUCE THOMAS, an individual, CHERYL THOMAS, an individual, GARY THOMPSON, an individual, KERRY THOMPSON,

EXHIBIT A

an individual, JOHN STEVE THOMPSON, an individual, SHARON THOMPSON, an individual, GORDON THORNTON, an individual, LUIS TORRES, an individual, MARIA TORRES, an individual, KENNY TRAN, an individual, CHRISTOL TRAN, an individual, PAULINE TRAUB, an individual, RUTH VALDEZ, an individual, JOHN VERKAIK, an individual, JENNIFER VERKAIK, an individual, MARCELA VILLAGOMEZ, an individual, KENNETH WALLACE, an individual, KAMILLE WALLACE, an individual, ROLF WALPOLE, an individual, TANGIE WALPOLE, an individual, JOHN WEBB, an individual, TERRY WEBB, an individual, HARVEY WEILER, an individual, MARLENE WEILER, an individual, KAY WILLIAMS, an individual, MARY LEE WILLIAMS, an individual, SANDA WIN, an individual, JEFFREY WOLF, an individual, LOLITA WOLF, an individual, KOK KYAN WONG, an individual, STEVEN YOUNG, an individual, REBECCA YOUNG, an individual, MARTIN ZAMUDIO, an individual, ESTELA ZAMUDIO, an individual, SUSAN ZANAYED. an individual (collectively "**Plaintiffs**") sue Defendants EMI RESORTS, INC., a foreign corporation; EMI SUN VILLAGE, INC., a foreign corporation; HSV HOTELES DE OPERADORA, S.A., f/k/a EMI RESORTS MANAGEMENT S.A., a foreign corporation; EMI RESORTS MANAGEMENT (S.V.G.), INC., a foreign corporation; EMI COFRESI DEVELOPMENTS, INC., a/k/a COFRESI DEVELOPMENTS, INC., a foreign corporation; KAHEBRAM, S.A., a foreign corporation; ELLIOT MANAGEMENT, INC., a/k/a EMI MANAGEMENT, INC., a foreign corporation; INVERSIONES AVIATI, S.A., a foreign corporation; SUN VILLAGE JUAN DOLIO, INC., a foreign corporation; PROMOTORA XARA, S.A., a foreign corporation; ELLIOTT MICHES HOLDINGS, INC., a foreign corporation; INVERSIONES YUBASO, S.A., a foreign corporation; INMOBILIARIA LIRIOS DEL TROPICO, S.A., a foreign corporation; INMOBILIARIA CANADAIGUA, S.A., a foreign corporation; HSV HOLDINGS, S.A., a foreign corporation; DESARROLLOS MIRADOR COFRESI, S.A., a foreign corporation; TENEDORA HSV [BP], S.A., a foreign corporation; VILLA SANTA PONCA, S.A., a foreign corporation; DCS DOMINICAN CONSTRUCTION SERVICES, S.A., a foreign corporation; ELLIOTT REGENT HOLDINGS, INC., a foreign

EXHIBIT A

corporation; ELLIOTT TOSCANA HOLDINGS, INC., a foreign corporation; LANDMARK LENDING CORPORATION, a foreign corporation; 408 CUMBERLAND HOLDINGS, INC., a foreign corporation; BERTUS MANAGEMENT, INC., a foreign corporation; ORANGEVILLE RESERVATION SERVICES, LTD., a California corporation; COFRESCO HOLDINGS, INC. , a foreign corporation; CCW DOMINICANA, S.A., a foreign corporation; MPS LTD., S.A., a foreign corporation; IMMOBILIARIA MONCEY, S.A., a foreign corporation; and CELLWAVE NETWORKS, LTD., a foreign corporation; WWIN INTERNATIONAL LTD., a foreign corporation; MELLESINO C. POR A., a foreign corporation; TENEDORA WESSEX DOMINICANA, S.A., a foreign corporation; SUN VILLAGE CONSTRUCCIONES, S.A., a foreign corporation; SUN VILLAGE JD HOLDING, INC., a Delaware corporation; 1211766 ALBERTA LTD., a foreign corporation; TRIPALMS REAL ESTATE INC., a foreign corporation; OCEAN PALMS REAL ESTATE (SVG) INC., a foreign corporation; DE MARCHENA KALUCHE & ASOCIADOS, a foreign corporation; ENRIQUE DE MARCHENA, an individual, VICTOR CABRAL, an individual, N.W.N GROUP, LLC, a/k/a NET WEALTH NAVIGATORS, LLC, a Nevada limited liability company, MICHAEL LAWTER, an individual, TIPPY TAN LAWTER, an individual, FREDERICK ELLIOTT, an individual and DEREK ELLIOTT, an individual, (collectively, "**Defendants**")  and state:

## INTRODUCTION

1.       As recent events make clear, some people are very greedy.  They will stop at nothing to scam someone of their money.  Their singular purpose in life is to make a buck, regardless of who, or how many, get hurt in the process.  Unfortunately, this case is one more example of what happens when the pursuit of the almighty dollar is separated from basic notions of right and wrong.  In this case, two so-called businessmen and expatriate Canadians, Frederick Elliott ("**Frederick**") and his son, Derek Elliott ("**Derek**"), conjured up a series of investment vehicles through which investors throughout the United States could purchase real estate interests in luxury vacation properties in the Dominican Republic.  Father and son, now residing permanently in the Dominican Republic, promised Plaintiffs and many others like them, inside

EXHIBIT A

and outside the United States, steady and predictable double-digit returns on what they represented was "safe" real estate investments.  Instead, the father and son pocketed the money and used it to finance a lavish lifestyle.  In what has truly become a sad cliché, Frederick and Derek misused Plaintiffs' hard-earned money to finance fanciful Hollywood productions, produce self-promotional videos, purchase a half-a-million-dollar yacht, and pay-off personal gambling debts in Las Vegas, among other things.  In total, the Elliotts received over $170,000,000.00 of investors' monies.

2.       Then, adding insult to injury, when Plaintiffs began to question Frederick and Derek about the nature and future of their investments, Frederick and Derek —as fraudsters often do—responded with threats and intimidation.   The Elliotts threatened that if purchasers, like Plaintiffs, pursued their legal rights, they would lose everything because Frederick, Derek and their companies were judgment proof.   In fact in an e-mail directed to purchasers inside and outside the United States, Frederick clearly stated that: "We have received information to the effect that, unfortunately, some clients are considering lawsuits to enhance their positions…. Accordingly, and on the instructions of legal counsel, we are taking the position that any clients who initiate lawsuits will not have available to them any of the restructuring options that we have offered or will offer … ***The result will be that the fractional interests attached to such notes not paid in full will likely be forfeited. Since it is very unlikely that such litigious clients will be able to penetrate our judgment proof structure, they will likely lose their entire investments***." *See* Composite Exhibit "A", E-mail from Frederick Elliott dated August 21, 2008 at pg. 1.

3.       It is now clear that to protect their ill-gotten gains, Frederick and Derek created a complex web of offshore companies, trusts, corporate entities, and shell corporations, all with the stated purpose of ensuring that they would be unreachable under the law for their unlawful activities and thus, in their minds, be "judgment proof."  In fact, Derek himself described this structure in response to a simple request that they confirm (with documentation) that they indeed owned the two resort properties at issue in this case.   Derek responded that "[o]f course Elliott entities own and control both hotels … However on the advice of our legal counsel… we cannot

EXHIBIT A

provide you with detailed information on our ownership structure.  ***The reason is that we have a complex structure designed to insulate these properties from claims and lawsuits.  These companies are completely judgment proof.***  We are not able to provide details on the multi jurisdictional corporate and trust ownership structure without compromising this protection." *See* Composite Exhibit "A", E-mail from Derek Elliott dated August 15, 2008 at Pp. 2-3..

4.      In light of these threats of lost investments, Frederick and Derek's taunting statements that they are judgment proof and will not have to answer for their actions, and Frederick and Derek's efforts to frighten and coerce purchasers not to pursue their legal rights, this action seeks to bring a measure of comfort and security to Plaintiffs and those that have been similarly injured.

5.      This is a civil action seeking, among other things, compensatory and exemplary damages in excess of $75,000.00 brought to redress a pattern of racketeering activity and tortious misconduct on Defendants' part targeting persons throughout the United States, including Florida.  The allegations detailed below involve a scheme to defraud, including but not limited to mail and wire fraud, the laundering of millions of dollars of illegitimately diverted funds at financial institutions and through other corporations, and the conversion of such funds into real property, personal property, and businesses, together constituting an illicit enterprise funded and maintained with ill-gotten gains in violation of the Federal Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1961, *et seq.*, and Florida statutory and common law.

## PARTIES, JURISDICTION, AND VENUE

6.      The following Plaintiffs are residents of the United States and otherwise *sui juris*. Plaintiffs are approximately two hundred and thirty-one several thousand purchasers of the various real estate products sold by Defendants.  Collectively Plaintiffs own all the various real estate products offered for sale by the Defendants.

a.      John Alexa is an adult resident of Tyngsboro, Maine and is otherwise *sui juris*.  Mr. Alexa purchased one two bedroom unit at The Residence, Sun Village Beach Resort in the amount of $50,000.00.

EXHIBIT A

       b.      Elsa Allred is an adult resident of Ventura, California and is otherwise *sui juris*. Ms. Allred purchased one Passport Residence Penthouse, Maxim Bungalows, Juan Dolio in the amount of $120,000.00.

       c.      Steven Anderson is an adult resident of Shafter, California and is otherwise *sui juris*. Mr. Anderson and his wife, Sheri purchased a penthouse in the amount of $37,500.00.

       d.      Joann Antrim is an adult resident Austin, Texas and is otherwise *sui juris*. Ms. Antrim purchased nine units of Passport Residence Condominium, Sun Village, Juan Dolio, in the amount of $94,921.92.

       e.      Bruce Arnold is an adult resident of Fairfield, California and is otherwise *sui juris*. Mr. Arnold and his wife, Kathleen Arnold purchased seven Sun Village Maxim Bungalows, Cofresi, in the amount of $33,203.13

       f.      Kerry Arnold is an adult resident of Alpine, Utah and is otherwise *sui juris*. Mr. Arnold and his wife, Jana Arnold purchased seven Sun Village Maxim Bungalows, Cofresi, in the amount of $303,460.00.

       g.      Juan Arrendondo is an adult resident of Stocktop, California and is otherwise *sui juris*. Mr. Arrendondo purchased one unit, Sun Village, The Residence, Cofresi, and two Maxim Studio Bungalows, Cofresi, in the amount of $140,000.00.

       h.      Alma Arthur is an adult resident of Stockton, California and is otherwise *sui juris*. Ms. Arthur purchased one Maxim Bungalow, Juan Dolio, in the amount of $46,035.00.

       i.      Garth Atwood is an adult resident of Payson, Utah and is otherwise *sui juris*. Mr. Atwood  and his wife, Ardith Atwood, purchased seven Passport Residence Condominiums, Sun Village, Juan Dolio, two 2-bedroom Grand Suites, 2 Passport Residence Condominium – Double, and 1 Passport Residence Condominium – King, Sun Village, Cofresi, amount of $285,328.21.

EXHIBIT A

j.      Laura Baker is an adult resident of Santa Rosa, California and is otherwise *sui juris*. Ms. Baker purchased two Passport Residence, Condominiums – King and one Passport Residence Condominium in the amount of $36,984.00.

k.      Annette Barnett is an adult resident of Santa Cruz, California and is otherwise *sui juris*. Ms. Barnett purchased one 1 bedroom, Sun Village Resort, Cofresi, in the amount of $10,000.00.

j.      Duane Barney is an adult resident of Highland, Utah and is otherwise *sui juris*. Mr. Barney and his wife, Laura Ann Olsen Barney, purchased property from the Elliotts in the amount of $56,250.00.

k.      Jesse Beal is an adult a resident of West Jordan, Utah and is otherwise *sui juris*. Mr. Beal purchased a Residence at Sun Village, Juan Dolio in the amount of $10,500.00.

l.      Kevin Bell is an adult resident of Hooper, Utah and is otherwise *sui juris*. Mr. Bell purchased one Maxim Bungalow – King, one Passport Residence Penthouse and one Passport Residence Condominium - Double, Cofresi, in the amount of $68,595.00.

m.      Isabelle Berrows is an adult resident of Oregon City, Oregon and is otherwise *sui juris*. Ms. Berrows purchased two Passport Residence Condominiums and one Passport Residence Penthouse, Sun Village, Cofresi, in the amount of $170,859.45.

n.      Stephen Biddulph is an adult resident of Provo, Utah and is otherwise *sui juris*. Mr. Biddulph purchased one Maxim Bungalows Passport Superior, Cofresi in the amount of $80,000.00.

o.      Alvin Brandt is an adult resident of San Leandro, California and is otherwise *sui juris*. Mr. Brandt and his wife, Irene Brandt, purchased one Maxim Bungalow – King, Cofresi, and one Passport Residence Condominium – King, and one Passport Superior Condominium, Juan Dolio, in the amount of $65,745.00.

p.      Patricia Lynne Brogan is an adult resident of Vallejo, California and is otherwise *sui juris*. Ms. Brogan purchased one Maxim Bungalow – King, Cofresi, and one Passport Residence Condominium – King, Juan Dolio, in the amount of $670,000.00.

EXHIBIT A

q.      John Brookman is an adult resident of Burley, Idaho and is otherwise *sui juris*.  Mr. Brookman purchased two units, Passport Residence Penthouse, Juan Dolio, in the amount of $63,281.25.

r.      Dawna Brower is an adult resident of Hyrum, Utah and is otherwise *sui juris*.  Ms. Brower purchased four Passport Superior Condominiums, Juan Dolio, in the amount of $75,000.00.

s.      Ralph Brower is an adult resident of Hyrum, Utah and is otherwise *sui juris*.  Mr. Brower purchased two Passport Residence Condominiums – King, Juan Dolio, in the amount of $47,000.00.

t.      Harold Brondum is an adult resident of Vallejo, California and is otherwise *sui juris*.   Mr. Brondum and his wife, Carol Brondum purchased seven Sun Village Maxim Bungalows, Cofresi, in the amount of $32,000.00.

u.      Luis Bustos is an adult resident of Santa Rosa, California and is otherwise *sui juris*.  Mr. Bustos and his wife, Blanca Bustos purchased one Studio, Maxim Bungalows, Cofresi, in the amount of $48,000.00.

v.      Spencer Call is an adult resident of West Haven, Utah and is otherwise *sui juris*.   Mr. Call purchased one Passport Residence Condominium, Double, One Passport Residence Penthouse, and one Passport Superior Condominium in the amount of $35,350.00.

w.      Michael Callahan is an adult resident of American Fork, Utah and is otherwise *sui juris*.  Mr. Callahan purchased one Studio Bungalow, Maxim Bungalows, and one Maxim Bungalow – King, Cofresi, in the amount of $95,000.00.

x.      Peter Campbell is an adult resident of Mercer Island, Washington, and is otherwise *sui juris.*  Mr. Campbell purchased a unit, Juan Dolio, in the amount of $56,125.00.

y.      Francisco Carmona is an adult resident of Santa Rosa, California and is otherwise *sui juris*.  Mr. Carmona purchased one Studio Bungalow, Maxim Bungalows, Cofresi, and on 1 Bedroom Grand Suite, Juan Dolio, in the amount of $95,347.00.

z.      Antonio Carreno is an adult resident of Rohnert Park, California and is

EXHIBIT A

otherwise *sui juris*.  Mr. Carreno and his wife, Febronia Carreno, purchased one Bungalow, Maxim Bungalows, Cofresi, and one Residence Condominium, Juan Dolio, in the amount of $32,550.00.

aa.     Gary Casassa is an adult resident of Santa Rosa, California and is otherwise *sui juris*.  Mr. Casassa purchased one 2 Bedroom Suite, Maxim Bungalow, in the amount of $67,900.00. Kerry Arnold is an adult resident of Alpine, Utah and is otherwise *sui juris*.  Mr. Arnold and his wife, Jana Arnold purchased seven Sun Village Maxim Bungalows, Cofresi, in the amount of $303,460.00.

bb.     Janie Catledge is an adult resident of Henderson, Nevada and is otherwise *sui juris*.  Ms. Arnold purchased a Residence at Cofresi, in the amount of $65,000.00.

cc.     Robert Garcia Ceja is an adult a resident of Fort Valley, Georgia and is otherwise *sui juris*.  Mr. Ceja purchased units in the amount of $64,867.50.

dd.     Jose Cendejas is an adult resident of Oxnard, California and is otherwise *sui juris*.  Mr. Cendejas and his wife, Irma, purchased a Residence unit at Juan Dolio, in the amount of $100,406.26.

ee.     Kerry Christensen is an adult resident of Provo, Utah and is otherwise *sui juris*.  Mr. Christensen and his wife, Kathie Christensen, purchased one 2 Bedroom Grand Bungalow, Maxim Bungalows, Cofresi, two Maxim Bungalow – Double, Cofresi, and in the amount of $242,376.00.

ff.     Roy Combs is an adult resident of Fairfield, California and is otherwise *sui juris*.   Mr. Combs and his wife, Cheryl Combs one Maxim Bungalow, Cofresi and Maxim Bungalows, Juan Dolio, in the amount of $97,125.00.

gg.     Michael Conner is an adult resident of Canton, Massachusetts and is otherwise *sui juris*.  Mr. Conner, and his wife Maria Conner, purchased eight units Passport Superior Condominiums in the amount of $337,504.00.

hh.     Darren Cossey is an adult resident of Santa Rosa, California and is otherwise *sui juris*.  Mr. Cossey and his wife, Jennifer Cossey, purchased a unit at Cofresi and a

EXHIBIT A

unit at Juan Dolio in the amount of $46,000.00

ii.     Kathy Cox is an adult resident of Glasgow, Kentucky and is otherwise *sui juris*.  Ms. Cox purchased two 1 Bedroom, unit at the Residence, Cofresi, in the amount of $20,000.00.

jj.     Eleanor Crawford is an adult resident of Centralia, Washington and is otherwise *sui juris*.  Ms. Crawford purchased three Maxima Bungalow Superior, three Maxim Bungalow Penthouse Suites and one Maxim Bungalow Two Bedroom Suite, Juan Dolio, in the amount of $347,800.00.

kk.     Brent Cromer is an adult resident of Anderson, South Carolina and is otherwise *sui juris*. Mr. Cromer purchased Juan Dolio Passport Superior Condo in the amount of $56,250.00.

ll.     Nancy Dieli is an adult resident of Park City Utah and is otherwise *sui juris*.  Ms. Dieli purchased 3 Passport Residence Penthouse, Juan Dolio, in the amount of $37,968.75.

mm.     Paul Dunn is an adult resident of Sebastopol, California and is otherwise *sui juris*.  Mr. Dunn purchased nine Maxim Bungalows, Juan Dolio, in the amount of $409,500.00.

nn.     Ramiro Efrain Silva Barrera is an adult resident of Santa Rosa, California and is otherwise *sui juris*.  Mr. Silva Barrera purchased three Passport Residence Condominium – King, and one Passport Superior Condominium in the amount of $50,203.13.

oo.     Jonathan Elbom is an adult resident of Austin, Texas and is otherwise *sui juris*.  Mr. Elbom purchased one Passport Residence Condominium, one 2 Bedroom Grand Suite, and two Passport Superior Condominiums, Juan Dolio, in the amount of $46,000.00.

pp.     Deanna Faenzi-Glass is an adult resident of Santa Rosa, California and is otherwise *sui juris*.  Ms. Faenzi-Glass purchased twenty-four units, Passport Superior Condominiums, Juan Dolio, in the amount of $240,000.00.

qq.     Joanne Falkowski is an adult resident of Vienna, Virginia and is otherwise

EXHIBIT A

*sui juris*.  Ms. Falkowski purchased six units Passport Superior Condominiums, Juan Dolio, in the amount of $60,000.00.

rr.     Charles Felton is an adult resident of Colorado Springs, Colorado and is otherwise *sui juris*.  Mr. Felton purchased eleven units 2 Bedroom Suite, ten units 1 Bedroom Suite, Residence, Cofresi, and one Grand Presidential Penthouse, Juan Dolio, in the amount of $350,000.00.

ss.     Jeronimo Fernandez is an adult resident of Santa Rosa, California and is otherwise *sui juris*.  Jeronimo and his wife, Maria Fernandez purchased two Passport Residence Condominiums – King, four Passport Resident Condominiums, Juan Dolio, and one Maxim Bungalow, Cofresi, in the amount of $177,882.00.

tt.     Alice Fitzwater is an adult resident of Santa Rosa, California and is otherwise *sui juris*.  Ms. Fitzwater purchased one Grand Penthouse Suite and one Passport Residence Condominium – King, Juan Dolio, in the amount of $36,750.00.

uu.     Gertrude Flood is an adult resident of Hopkinsville, Kentucky and is otherwise *sui juris*.  Ms. Flood purchased one 1 Bedroom Suite and 1 2 Bedroom Suite, Residence, in the amount of $30,000.00.

vv.     Kerry Flynn is an adult resident of Clarklake, Michigan and is otherwise *sui juris*.  Mr. Flynn purchased one Studio Bungalow, Cofresi, and interest in The Residence, Juan Dolio, in the amount of $62,000.00.

ww.     Thomas Freese is an adult resident of Gilmanton, New Hampshire and is otherwise *sui juris*.  Mr. Freese purchased a Residence, Juan Dolio, in the amount of $43,350.00.

xx.     John Gardiner is an adult resident of Woodland, Utah and is otherwise *sui juris*.  Mr. Gardiner and his wife, Diane Gardiner, purchased one Maxim Bungalow Residence – King, Juan Dolio, in the amount of $53,718.75.

yy.     Calixto Gayosso Negrete is an adult resident of Windsor, California and is otherwise *sui juris*.  Mr. Gayosso purchased Maxim Bungalow, Juan Dolio, in the amount of $74,250.00.

EXHIBIT A

zz.     Leila Gervais is an adult resident of Suisun City, California, and is otherwise *sui juris*.   Ms. Gervais purchased a unit, Sun Village, in the amount of $10,546.00.

aaa.     Victor Giron-Alvarez is an adult resident of Healdsburg, California and is otherwise *sui juris*. Ms. Giron-Alvarez purchased one Passport Superior Condominiums and one Passport Residence Penthouse, Juan Dolio, in the amount of $22,656.00.

bbb.     Albino Gonzalez is an adult resident of Oxnard, California and is otherwise *sui juris*.  Mr. Gonzalez and his wife Ana Gonzalez, purchased one Passport Residence and one Passport Resident Condominium – King, Juan Dolio, in the amount of $63,421.88.

ccc.     Jose Gurrola is an adult resident of Plano, Texas and is otherwise *sui juris*. Mr. Gurrola, and his wife Sonia Gurrola, purchased three Passport Superior Condominiums, Juan Dolio, in the amount of $31,640.64.

ddd.     Brian Hall is an adult resident of Nephi, Utah and is otherwise *sui juris*. Mr. Hall purchased one Passport Superior Condominium, Juan Dolio, in the amount of $28,125.00.

eee.     Bruce Hall is an adult resident of Nephi, Utah and is otherwise *sui juris*. Mr. Hall purchased two units Passport Residence Penthouse, nine units Passport Residence Condominiums. Cofresi, in the amount of $121,640.00.

fff.     Tyler Hall is an adult resident of Lehi, Utah and is otherwise *sui juris*.  Mr. Hall purchased one unit Passport Superior Condominium, Juan Dolio, in the amount of $42,188.00.

ggg.     Raymond Handy is an adult resident of Santa Rosa, California and is otherwise *sui juris*.  Mr. Handy and his wife, Meghan Handy, purchased one Maxim Bungalow Superior Suite, Juan Dolio, in the amount of $52,875.00.

hhh.     Clayton Hansen is an adult resident of Cedar Hills, Utah and is otherwise *sui juris*.  Mr. Hansen and his wife, Alyson Hansen, purchased one Passport Residence unit in the amount of $312,305.00.

iii.     Karen Hansen is an adult resident of Tiburon, California and is otherwise

EXHIBIT A

*sui juris*.  Ms. Hansen purchased on Residence unit, Juan Dolio, in the amount of $10,000.00.

jjj.     Thomas Harp is an adult resident of Sacramento, California and is otherwise *sui juris*.  Mr. Harp purchased nine Passport Residence Condominium – Double, Juan Dolio, in the amount of $126,562.50.

kkk.    Rick Hawker is an adult resident of Morgan Hill, California and is otherwise *sui juris*.  Mr. Hawker purchased twenty Passport Residence Condominium – King Units, one Bedroom Grand Suite, one Penthouse Suite and Unit, Juan Dolio, in the amount of $276,006.25.

lll.     Dennis Haworth is an adult resident of Sacramento, California and is otherwise *sui juris*.  Mr. Haworth purchased nine 1 Bedroom Grand Suite unites, Juan Dolio, in the amount of $126,562.50.

mmm. Klaus Hofmann is an adult resident of Miramar Beach, Florida and is otherwise sui juris.  Mr. Hofmann purchased one Penthouse suite, 12 Superior Condominiums, Juan Dolio, and thirteen Maxim Bungalow units, Cofresi, in the amount of $155,245.00.

nnn.    Gary House is an adult and is a resident of Austin, Texas and is otherwise *sui juris*. Mr. House purchased on Passport Superior Condominium unit and one Maxim Bungalow 2 Bedroom unit, Juan Dolio, in the amount of $95,000.00.

ooo.    Trent Hudson is an adult and is a resident of Sonoma, California and is otherwise *sui juris*. Mr. Hudson and his wife, Valerie, purchased three Passport Residence Condominiums – King, units, Juan Dolio, in the amount of $39,656.25.

ppp.    Gilbert Iruegas is an adult resident of Santa Cruz, California and is otherwise *sui juris*.  Mr. Iruegas purchased three Passport Superior Condominium units, Juan Dolio, in the amount of $30,000.00.

qqq.    Cheryl Jacks is an adult resident of Las Vegas, Nevada and is otherwise *sui juris*.  Ms. Jacks purchased ten Passport Residence Penthouse units and two Passport Superior Condominium units, Maxim Bungalows, Juan Dolio, in the amount of $140,000.00.

EXHIBIT A

rrr.     Kay Lynn Jacobson is an adult resident of Phoenix, Arizona and is otherwise *sui juris*.  Ms. Jacobson purchased four Passport Residence Condominiums – Double units, Sun Villages, Juan Dolio, in the amount of $75,000.00.

sss.     Alan Jenkins is an adult resident of Crockett, California and is otherwise *sui juris*.  Mr. Jenkins purchased five Superior Condominium units, Juan Dolio, and one unit, Cofresi, in the amount of $20,000.00.

ttt.     Gilbert Jing is an adult resident of Oakland, California and is otherwise *sui juris*.  Mr. Jing purchased two Passport Superior Condominium units, Juan Dolio, in the amount of $56,250.00.

uuu.     Frank Junio is an adult resident of Tulare, California and is otherwise *sui juris*.  Mr. Junio and his wife, Rhonda Junio, purchased one Passport Superior Condominium unit and eight Passport Residence Condominium units, Juan Dolio, in the amount of $112,499.00.

vvv.     John Kassel is an adult resident of Round Rock, Texas and is otherwise *sui juris*.  Mr. Kassel and his wife, Patricia Kassel purchased one Passport Residence Penthouse unit; five Passport Superior Condominium units, one Maxim Bungalow – King, unit, two 2 Bedroom Grand Suite units, two Passport Residence Condominium – Double units, Maxim Bungalows, Cofresi, in the amount of $259,100.00.

www.     John Kay is an adult resident of Clayton, California and is otherwise *sui juris*. Mr. Kay purchased one Maxim Bungalow – King Unit, Cofresi, in the amount of $43,245.00.

xxx.     Michael Keller is an adult resident of Price, Utah and is otherwise *sui juris*.  Mr. Keller and his wife, Lana Keller purchased on Condominium – Double unit, and eight Pendhouses, Juan Dolio, in the amount of $115,312.50.

yyy.     Vernon Killen is an adult resident of Georgetown, Texas and is otherwise *sui juris*.  Mr. Killen purchased two Passport Residence Penthouse units and seven Passport Superior Condominium units the amount of $94,000.00.

EXHIBIT A

zzz.    Sean Kirby is an adult resident of Visalia, California and is otherwise *sui juris*.  Mr. Kirby purchased one Passport Superior Condominium unit, Juan Dolio, in the amount of $10,000.00.

aaaa.   Carol Kitt is an adult resident of Burley, Idaho and is otherwise *sui juris*.  Ms. Kitt purchased five Passport Residence Penthouse Units, Juan Dolio, in the amount of $63,281.25.

bbbb.   Robert Kitt is an adult resident of Burley, Idaho and is otherwise *sui juris*.  Mr. Kitt purchased one Maxim Bungalow Double unit, one 12 Bedroom Grand Bungalow Double unit, Cofresi, and eight Passport Residence Condominium Double units and two Passport Residence Penthouse units in the amount of $232,487.50.

cccc.   Warrenetta Lane is an adult resident of Novato, California and is otherwise *sui juris*.   Ms. Lane purchased five Passport Superior Condominium units, Juan Dolio, one 1 Bedroom Condominium unit and one 2 Bedroom Condominium unit, Cofresi, in the amount of $206,000.00.

dddd.   James Lawrence is an adult resident of Henderson, Nevada and is otherwise *sui juris*.   Mr. Lawrence and his wife, Wendy Lawrence, purchased five 2 Bedroom Condominium units and two 1 bedroom units in the amount of $135,000.00

eeee.   Richard Lee is an adult resident of San Francisco, California and is otherwise *sui juris*.   Mr. Lee and his wife, May Lee, purchased both Maxim Bungalows Cofresi and Residence at Juan Dolio in the amount of $360,967.50.

ffff.    Wayland Lee is an adult resident of Rohnert Park, California and is otherwise *sui juris*.   Mr. Lee purchased six Passport Superior Condominium units, Juan Dolio, in the amount of $63,093.76.

gggg.   Barbara Lewis is an adult resident of Visalia, California and is otherwise *sui juris*.  Ms. Lewis purchased five 1 Bedroom Condominium units, Maxim Bungalows, in the amount of $50,000.00.

hhhh.   Jose Manuel Leyva Aguilar is an adult resident of Cloverdale, California

EXHIBIT A

and is otherwise *sui juris*.   Mr. Aguilar purchased Passport Residence Penthouse at Juan Dolio in the amount of $12,656.25.

iiii.    Earl Linebaugh is an adult resident of E. Berlin, Pennsylvania and is otherwise *sui juris*.   Mr. Linebaugh and his wife, Rita Linebaugh, purchased one Passport Residence Penthouse unit, Juan Dolio, in the amount of $33,750.00.

jjjj.    Ed Looper is an adult resident of Oakdale, California and is otherwise *sui juris*.   Mr. Looper purchased one Maxim Bungalow unit, Juan Dolio, in the amount of $28,125.00.

kkkk.   Emilia Lopez is an adult resident of Windsor, California and is otherwise *sui juris*.   Ms. Lopez purchased one Residence unit, Juan Dolio, in the amount of $13,218.78.

llll.    Erika Lopez is an adult resident of Tracy, California and is otherwise *sui juris*.   Ms. Lopez purchased one Passport Superior Condominium unit, Juan Dolio, in the amount of $28,125.00.

mmmm.    Findencio Lopez is an adult resident of Oxnard, California and is otherwise *sui juris*.   Mr. Lopez purchased two Passport Superior Condominium units, Juan Dolio, in the amount of $21,093.76.

nnnn.   Tiburcio Lopez is an adult resident of Laytonville, California and is otherwise *sui juris*.   Mr. Lopez purchased seven Passport Superior Condominium units, Juan Dolio, in the amount of $73,828.16.

oooo.   Douglas Madsen is an adult resident of Garden City, Utah and is otherwise *sui juris*.   Mr. Madsen and his wife, Cheryl purchased one Maxim Bungalow King unit, Cofresi, and ten Passport Superior Condominium units, Juan Dolio, in the amount of $143,245.00.

pppp.   Ismael Manzo Alvarez is an adult resident of Santa Rosa, California and is otherwise *sui juris*.   Mr. Manzo Alvarez and purchased one Passport Residence Condominium, King Unit, Juan Dolio, in the amount of $56,250.00.

qqqq.   Angel Maravilla is an adult resident of Santa Rosa, California and is otherwise *sui juris*.   Mr. Maravilla and his wife, Piedad Maravilla, purchased two Passport

EXHIBIT A

Residential Condominium units, Juan Dolio, in the amount of $56,250.00.

rrrr.    Anthony Martin is an adult resident of Pixley, California and is otherwise *sui juris*.  Mr. Martin purchased two 2 Maxim Bungalow Bedroom, Grand, Confresi, and one unit, Juan Dolio, in the amount of $168,489.00.

ssss.    Ozzie Martin, Jr. is an adult resident of Tulare, California and is otherwise *sui juris*.  Mr. Martin purchased three Passport Residence Condominium King Units, Juan Dolio, in the amount of $39,565.25.

tttt.    William Matz is an adult and is a resident of Windsor, California and is otherwise *sui juris.* Mr. Matz and his wife, Erica, purchased investments in the amount of $93,000.00.

uuuu.   Kyle McArthur is an adult resident of Oakley, Utah and is otherwise *sui juris*.  Mr. McArthur purchased four 2 Bedroom Grand Suite units, Juan Dolio, in the amount of $67,500.00.

vvvv.   Paul McKenna is an adult resident of Los Gatos, California and is otherwise *sui juris*.  Mr. McKenna and his wife, Alisa Krinsky, purchased one Passport Superior Condominium unit and one Passport Residential Penthouse unit in the amount of $41,250.00.

wwww.        Cheryl Meyer-Young is an adult resident of Santa Rosa, California and is otherwise *sui juris*.  Ms. Meyer-Young purchased one 2 Bedroom Suite unit and one 2 Bedroom Grand Suite unit, Cofresi, in the amount of $31,875.00.

xxxx.   Jose Millan is an adult resident of Santa Rosa, California and is otherwise *sui juris*.  Mr. Millan and his wife, Emma Millan, purchased ten 2 Bedroom Suite units, Cofresi, in the amount of $150,000.00.

yyyy.   Karel Mojzis is an adult resident of Citrus Heights, California and is otherwise *sui juris*.  Ms. Mojzis purchased one Resident unit, Juan Dolio, in the amount of $21,000.00.

zzzz.   Shirley Moore is an adult resident of Petaluma, California and is otherwise *sui juris*. Ms. Moore purchased seventy-two Passport Condominium units, four Passport

EXHIBIT A

Residence Condominium King Units, Juan Dolio, in the amount of $772,594.11.

aaaaa. Shaun Morris is an adult resident of London, England and is otherwise *sui juris*. Mr. Morris purchased condominiums in Maxim Bungalow in the amount of $43,990.00.

bbbbb. Thomas Musgrove is an adult resident of Avinger, Texas and is otherwise *sui juris*. Mr. Musgrove purchased nine Passport Residence King Condominium units, one Passport Residence Penthouse unit, and one Passport Residence Condominium unit in the amount of $149,765.63.

ccccc. Don Myres is an adult resident of Liberty Hills, Texas and is otherwise *sui juris.* Mr. Myers and his wife, Shirley Myres, purchased nine Passport Residence Condominium units, one Passport Residence Penthouse, and one Passport Residence Condominium unit in the amount of $194,500.00.

ddddd. Sergio Navarro is an adult resident of Oxnard, California and is otherwise *sui juris*. Mr. Navarro, and his wife, Rosa Navarro, purchased four 2 Bedroom Grand Suite units and two Passport Residence Condominium units, Juan Dolio, in the amount of $355,640.64.

eeeee. Daniel Nielson is an adult resident of W. Valley City, Utah and is otherwise sui *juris*. Mr. Nielson purchased one Passport Residence Condominium King Unit, one Passport Residence Penthouse, one Passport Superior Condominium, Juan Dolio, in the amount of $34,500.00.

fffff. Walter Newbaum is an adult resident of Puerto Plata, Dominican Republic and is otherwise *sui juris*. Mr. Newbaum and his wife, Pam Newbaum, purchased one Maxim Studio Bungalow unit and one Maxim Bungalow Double unit, Cofresi, in the amount of $73,800.00.

ggggg. Roberta O'Brion is an adult resident of Stockton, California and is otherwise *sui juris*. Ms. O'Brion purchased on Passport Residence Condominium, Juan Dolio, in the amount of $10,546.88.

hhhhh. Ruth O'Hagan is an adult resident of Lowell, Massachusetts and is otherwise *sui juris*. Ms. O'Hagan purchased on Residence unit, Cofresi, in the amount of

EXHIBIT A

$30,000.00.

iiiii.    Juan Olvera-Quijas is an adult resident of Santa Rosa, California and is otherwise *sui juris*.  Mr. Olvera-Quijas purchased one Maxim Bungalow, Cofresi, in the amount of $47,550.00.

jjjjj.    Alberto Orozco is an adult resident of Santa Rosa, California and is otherwise *sui juris*.  Mr. Orozco and his wife, Norma Orozco, purchased two Passport Residence Condominium double units, in the amount of $112,500.00.

kkkkk. Mario Ortiz is an adult resident of Oxnard, California and is otherwise *sui juris*.  Mr. Ortiz and his wife, Loredana Ortiz, purchased one Residence unit, Juan Dolio, in the amount of $21,093.76.

lllll.    Matthew Parente is an adult resident of Austin, Texas and is otherwise *sui juris*. Mr. Parente purchased one Passport Superior Condominium unit, Juan Dolio, in the amount of $21,093.76.

mmmmm.    Jose Pena is an adult resident of Windsor, California and is otherwise *sui juris*.  Mr. Pena and his wife, Rafaela Pena purchased six Passport Superior Condominium units, Juan Dolio, in the amount of $225,000.00.

nnnnn. Guadalupe Perez is an adult resident of Santa Rosa, California and is otherwise *sui juris*.  Ms. Perez and her husband, Pablo Canela, purchased two Passport Superior Condominium units, Juan Dolio, in the amount of $56,250.00.

ooooo. Felipe Perez is an adult reside of Santa Rosa, California and is otherwise *sui juris*.  Mr. Perez and his wife, Maria Perez purchased at the Residence, Sun Village, Juan Dolio, in the amount of $101,250.00.

ppppp. Milton Pettit is an adult resident of Amity, Oregon and is otherwise *sui juris*.  Mr. Pettit purchased one Studio Maxim Bungalow, Cofresi, and one 1 Bedroom Grand Suite, Juan Dolio, in the amount of $62,175.00.

qqqqq. Nolan Phillips is an adult resident of Woodland, Utah and is otherwise *sui juris*.  Mr. Phillips and his wife, Jennie Phillips, purchased one Passport Superior Condominium

EXHIBIT A

unit, Juan Dolio, in the amount of $10,000.00.

rrrrr.   Charles Puckett is an adult resident of Hopkinsville, Kentucky and is otherwise *sui juris*.  Mr. Puckett purchased one Maxim Bungalow King, Cofresi, one Studio Passport unit, Juan Dolio, in the amount of $90,245.00.

sssss.   Randy Pullman is an adult resident of Layton, Utah and is otherwise *sui juris*.  Mr. Pullman purchased one Passport Penthouse unit, Juan Dolio, in the amount of $12,656.25.

ttttt.    Kevin Rainey is an adult resident of Kenai, Alaska and is otherwise *sui juris*.  Mr. Rainey and his wife, Cindy Rainey, purchased two Passport Residence Condominium units, Juan Dolio, and two Maxim Bungalows, King, Cofresi, in the amount of $78,753.76.

uuuuu. Lowell Rice is an adult resident of Claremont, California and is otherwise *sui juris*.  Mr. Rice, and his wife, Linda Rice, purchased two Passport Superior Condominium units and two Passport Residence Penthouse units, Juan Dolio, four 2 Bedroom Suite units, on Studio Bungalow unit, Cofresi, in the amount of $252,610.00.

vvvvv. Charlyn Roberts is an adult resident of Yuba City, California and is otherwise *sui juris*.  Ms. Roberts purchased one 1 Bedroom unit, Cofresi, in the amount of $10,000.00.

wwwww.      Abel Rocha is an adult resident of Healdsburg, California.  Mr. Rocha purchased on Penthouse unit and, Juan Dolio, and one 1 Bedroom Suite unit, Cofresi, in the amount of $40,000.00.

xxxxx. Juan Rodriquez, Jr. is an adult resident of Healsburg, California and is otherwise *sui juris*.   Mr. Rodriguez purchased one Passport Superior Condominium in the amount of $10,000.00.

yyyyy. Judith Rogers is an adult resident of Stockton, California and is otherwise *sui juris*.  Mr. Rogers purchased Residence units, Juan Dolio, in the amount of $84,375.00.

zzzzz.  Joe Rossiter is an adult resident of Tulare, California and is otherwise *sui juris*.  Mr. Rossiter and his wife, Ima Jean Rossiter purchased twenty Passport Superior

EXHIBIT A

Condominium units and one 2 Bedroom Grand Suite, Juan Dolio, in the amount of $216,875.00.

aaaaaa.    Jose Luis Sanchez is an adult resident of Geyersville, California and is otherwise *sui juris*.  Mr.  Sanchez purchased five 2 Bedroom Suite units, Cofresi, in the amount of $95,500.00.

bbbbbb.    Samuel Sanchez is an adult resident of Santa Rosa, California and is otherwise *sui juris*.  Mr. Sanchez purchased two Maxim Bungalows, King, Cofresi, in the amount of $86,490.00.

cccccc.    Peter Scott is an adult resident of and is otherwise Fair Oaks, California and is otherwise *sui juris*.  Mr. Scott purchased Superior Passport Condominium unites located at Juan Dolio, in the amount of $112,500.00.

dddddd.    Miguel Silva Meza is an adult resident of Healdsburg, California and is otherwise *sui juris*.  Mr. Silva purchased one 1 Bedroom Suite unit, Cofresi, 1in the amount of $10,000.00.

eeeeee.    Angela Simas is an adult resident of Ridgefield, Washington and is otherwise *sui juris*.  Ms. Simas purchased Four Passport Superior Condominium units, Juan Dolio, in the amount of $42,187.50.

ffffff.   Danou Sisa-At is an adult resident of Alameda, California and is otherwise *sui juris*.  Mr. Sisa-At purchased one Grand Presidential Penthouse unit, Cofresi, one Passport Residence Penthouse, Juan Dolio the amount of $88,750.00.

gggggg.    Jared Skelton is an adult resident of Provo, Utah and is otherwise *sui juris*.  Mr. Skelton and his wife, Jenny Skelton, purchased one Residence Condominium in the amount of $12,500.00.

hhhhhh.    Gloria Smith is an adult and is a resident of N. Las Vegas, Nevada and is otherwise *sui juris*.  Ms. Smith purchased five 2 Bedroom Suites, Cofresi, in the amount of $75,000.00.

iiiiii.   Jim Sniezko is an adult resident of San Francisco, California and is otherwise *sui juris*.  Mr. Sniezko purchased four Passport Superior Condominium units Juan

EXHIBIT A

Dolio, in the amount of $72,000.00.

jjjjjj.    James Soltis is an adult resident of Pine Valley, California and is otherwise *sui juris*.  Mr. Soltis and his wife, Rosalind Soltis, purchased one Passport Residence unit and one Passport Penthouse unit, Juan Dolio, in the amount of $45,206.25.

kkkkkk.    Stanton Southwick is an adult resident of Henderson, Nevada and is otherwise *sui juris*.  Mr. Southwick and his wife, Jill Southwick, purchased four 2 Bedroom Grand Suites and two 1 Bedroom Grant Suite, Cofresi, In the amount of $100,000.00.

llllll.    Martha Spence is a residence of Middletown, California and is otherwise *sui juris*.  Ms. Spence purchased property in the amount of $16,800.00.

mmmmmm.    Yasuko Stockdale is an adult resident of La;s Vegas, Nevada and is otherwise *sui juris*.  Ms. Stockdale purchased a unit at Sun Village Cofresi, in the amount of $20,000.00.

nnnnnn.    William Sublette is an adult resident of Las Vegas, Nevada and is otherwise *sui juris*.  Mr. Sublette and his wife, Lori Sublette, purchased units located at the Sun Village Cofresi, in the amount of $450,000.00.

oooooo.    Sam Syliphone is an adult resident of Santa Rosa, California and is otherwise *sui juris*.  Mr. Syliphone purchased one Passport Superior Condominium unit, Juan Dolio, in the amount of $10,000.00.

pppppp.    Bill Tabbert is an adult resident of Austin, Texas and is otherwise *sui juris*.  Mr. Tabbert and his wife, Linda Tabbert, purchased three Maxim Bungalow Superior units and one Passport Residence Condominium Unit, Juan Dolio in the amount of $147,937.52.

qqqqqq.    Steven Tanner is an adult resident of Payson, Utah and is otherwise *sui juris*.  Mr. Tanner and his wife, Kathleen Tanner, purchased two Maxim Bungalow King, 2 Maxim Bungalow Double, and two Studio Bungalow Units, Cofresi, in the amount of $276,955.00.

rrrrrr.    Maria Tapia is an adult resident of Santa Rosa, California and is otherwise *sui juris*.  Ms. Tapia purchased seven Passport Superior Condominium units, Juan Dolio, in the

EXHIBIT A

amount of $196,875.00.

ssssss. Bruce Thomas is an adult resident of Scottsdale, Arizona and is otherwise *sui juris*. Mr. Thomas and his wife, Cheryl Thomas, purchased units, Residence, Sun Village Cofresi, in the amount of $56,250.00.

tttttt. Gary Thompson is an adult resident of Highland, Utah and is otherwise *sui juris*. Mr. Thompson and his wife Kerry Thompson, purchased two Passport Superior Condominium units, Juan Dolio, in the amount of $92,188.00.

uuuuuu. John Steve Thompson is an adult resident of Springville, Utah and is otherwise *sui juris*. Mr. Thompson and his wife, Sharon, purchased twenty-one 2 Bedroom Condominium units, two 1 Bedroom Condominium unit, Cofresi, units Residence, Juan Dolio, in the amount of $940,000.00.

vvvvvv. Gordon Thornton is an adult resident of Las Vegas, Nevada and is otherwise *sui juris*. Mr. Thornton purchased one 2 Bedroom Condominium unit, Cofresi, in the amount of $150,000.00.

wwwwww. Luis Torres is an adult resident of Windsor, California and is otherwise *sui juris*. Mr. Torres and his wife, Maria Torres, purchased three Passport Residence Condominiums Double units, Juan Dolio, in the amount of $168,750.00.

xxxxxx. Kenny Tran is an adult resident of Riverside, California and is otherwise *sui juris*. Mr. Tran and his wife, Christol Tran, purchased fourteen Passport Superior Condominium units and one Passport Residence Condominium King units, and two 2 Bedroom Grand Suite units, Juan Dolio, in the amount of $184,500.00.

yyyyyy. Pauline Traub is an adult resident of Santa Rosa, California and is otherwise *sui juris*. Ms. Traub purchased property from the Elliotts in the amount of $160,000.00. Documentation as to the specific property purchased is pending.

zzzzzz. Ruth Valdez is an adult resident of San Lorenzo, California and is otherwise *sui juris*. Ms. Valdez purchased six Passport Superior Condominium units, Cofresi, in the amount of $60,000.00.

EXHIBIT A

aaaaaaa.        John Verkaik is an adult resident of Tulare, California and is otherwise *sui juris*.   Mr. Verkaik and his wife, Jennifer Verkaik, purchased one Passport Residence Condominium Double, Juan Dolio, in the amount of $14,067.50.

bbbbbbb.        Marcela Villagomez is an adult a resident of Laytonville, California and is otherwise *sui juris*.   Ms. Villagomez purchased one Residence unit, Juan Dolio, in the amount of $10,000.00.

ccccccc.        Kenneth Wallace is an adult resident of Arlington, Texas and is otherwise *sui juris*.   Mr. Wallace and his wife, Kamille Wallace, purchased four Passport Superior Condominium units, two 2 Bedroom Grand Suites, one Passport Residence Condominium, King, Juan Dolio, in the amount of $100,000.00.

ddddddd.        Rolf Walpole is an adult resident of Mapleton, Utah and is otherwise *sui juris*.   Mr. Walpole and his wife, Tangie, purchased two Passport Residence Condominium units, Juan Dolio, in the amount of $56,250.00.

eeeeee.        John Webb is an adult resident of Granbury, Texas and is otherwise *sui juris*.   Mr. Webb and his wife Terry Webb purchased two Passport Residence Condominiums Double units, one Passport Residence Penthouse unit, one Passport Superior Condominium unit, Juan Dolio, one The Residence Maxim Bungalow, Cofresi, in the amount of $100,000.00.

fffffff. Harvey Weiler is an adult resident of Delhi, Ontario and is otherwise *sui juris*.   Mr. Weiler and his wife, Marlene Weiler, purchased one Passport Residence Condominium, King, Juan Dolio, in the amount of $13,218.75.

ggggggg.        Kay Williams is an adult resident of West Valley City, Utah and is otherwise *sui juris*.   Ms. Williams purchased two 2 Bedroom Condominium units and one 1 Bedroom Condominium unit, Cofresi, in the amount of $50,000.00.

hhhhhhh.        Mary Lee Willams is an adult resident of Stockton, California and is otherwise *sui juris*.   Ms. Williams purchased property from the Elliotts in the amount of $73,881.92. Documentation as to the specific property purchased is pending.

EXHIBIT A

iiiiiii.   Sanda Win is an adult resident of San Francisco, California and is otherwise *sui juris*.  Ms. Win purchased one unit, Juan Dolio, in the amount of $12,656.00

jjjjjjj.   Jeffrey Wolf is an adult resident of San Rafael, California and is otherwise *sui juris*.  Mr. Wolf and his wife, Lolita Wolf, purchased two units in the amount of $36,000.00.  Documentation as to the specific property purchased is pending.

kkkkkkk.     Kok Kyan Wong is an adult resident of San Francisco, California and is otherwise *sui juris*.  Mr. Wong purchased three Passport Superior Condominium units, Juan Dolio, in the amount of $30,000.00.

lllllll.   Steven Young is an adult resident of Abbottstown, California and is otherwise *sui juris*.   Mr. Young and his wife, Rebecca Young, purchased three Passport Residence Penthouse units, Juan Dolio, in the amount of $101,250.00.

mmmmmmm. Martin Zamudio is an adult resident of Sebastopol, California and is otherwise *sui juris*.  Mr. Zamudio and his wife, Estela Zamudio, purchased three Passport Superior Condominium units, three Passport Residence Condominium units, Juan Dolio, in the amount of $193,640.64.

nnnnnnn.     Susan Zanayed is an adult resident of Layton, Utah and is otherwise *sui juris*.   Ms. Zanayed purchased one Maxim Bungalow Residence, Juan Dolio, in the amount of $10,000.00.

7.     EMI RESORTS, INC. ("**EMIRI**"), is a corporation organized and existing under the laws of the Turks and Caicos.

8.     EMI SUN VILLAGE, INC. ("**EMISVI**"), is a corporation organized and existing under the laws of the Turks and Caicos.

9.     HSV HOTELES DE OPERADORA, S.A., f/k/a EMI RESORTS MANAGEMENT S.A. ("**HSVHDO**"), is a corporation organized and existing under the laws of the Dominican Republic.

10.     EMI RESORTS MANAGEMENT (S.V.G.), INC. ("**ERMSVG**"), is a corporation organized and existing under the laws of St. Vincent and the Grenadines.

EXHIBIT A

11.    EMI COFRESI DEVELOPMENTS, INC., also known as COFRESI DEVELOPMENTS, INC. ("**EMICOFRESI**"), is a corporation organized and existing under the laws of the Turks and Caicos.

12.    KAHEBRAM, S.A.  ("**KAHEBRAM**"), is a corporation organized and existing under the laws of the Dominican Republic.

13.    ELLIOTT MANAGEMENT, INC., also known as EMI MANAGEMENT, INC. ("**EMI**"), is a corporation organized and existing under the laws of the province of Ontario, Canada.

14.    INVERSIONES AVIATI, S.A. ("**AVIATI**"), is a corporation organized and existing under the laws of the Dominican Republic.

15.    SUN VILLAGE JUAN DOLIO, INC. ("**SVJD**"), is a corporation organized and existing under the laws of the Turks and Caicos.

16.    PROMOTORA XARA, S.A. ("**XARA**"), is a corporation organized and existing under the laws of the Dominican Republic.

17.    ELLIOTT MICHES HOLDINGS, INC. ("**EMH**"), is a corporation organized and existing under the laws of the Turks and Caicos.

18.    INVERSIONES YUBASO, S.A. ("**YUBASO**"), is a corporation organized and existing under the laws of the Dominican Republic.

19.    INMOBILIARIA LIRIOS DEL TROPICO, S.A. ("**ILT**"), is a corporation organized and existing under the laws of the Dominican Republic.

20.    INMOBILIARIA CANADAIGUA, S.A. ("**CANADAIGUA**"), is a corporation organized and existing under the laws of the Dominican Republic.

21.    HSV HOLDINGS, S.A. ("**HSV HOLDINGS**"), is a corporation organized and existing under the laws of the Dominican Republic.

22.    DESARROLLOS MIRADOR COFRESI, S.A. ("**MIRADOR**"), is a corporation organized and existing under the laws of the Dominican Republic.

23.    TENEDORA HSV [BP], S.A. ("**TENEDORA**") is a corporation organized and

EXHIBIT A

existing under the laws of the Dominican Republic.

24.     VILLA SANTA PONCA, S.A. ("**VSP**"), is a corporation organized and existing under the laws of the Dominican Republic.

25.     DCS DOMINICAN CONSTRUCTION SERVICES, S.A. ("**DCS**"), is a corporation organized and existing under the laws of the Dominican Republic.

26.     ELLIOTT REGENT HOLDINGS, INC. ("**ERH**"), is a corporation organized and existing under the laws of the Turks and Caicos.

27.     ELLIOTT TOSCANA HOLDINGS, INC. ("**ETH**"), is a corporation organized and existing under the laws of the Turks and Caicos.

28.     LANDMARK LENDING CORPORATION ("**LLCORP**"), is a corporation organized and existing under the laws of the Turks and Caicos.

29.     408 CUMBERLAND HOLDINGS, INC. ("**408**"), is a corporation organized and existing under the laws of the province of Ontario, Canada.

30.     BERTUS MANAGEMENT, INC. ("**BERTUS**"), is a corporation organized and existing under the laws of the Turks and Caicos.

31.     ORANGEVILLE RESERVATION SERVICES, LTD. ("**ORANGEVILLE**"), is a corporation organized and existing under the laws of the State of California.

32.     CCW DOMINICANA, S.A., also known as CCW, LTD. ("**CCW**"), is a corporation organized and existing under the laws of the Dominican Republic.

33.     MPS LTD., S.A. ("**MPS**"), is a corporation organized and existing under the laws of the Dominican Republic.

34.     COFRESCO HOLDINGS, INC. ("**COFRESCO**"), is a corporation organized and existing under the laws of the Turks and Caicos.

35.     IMMOBILIARIA MONCEY, S.A. ("**MONCEY**"), is a corporation organized and existing under the laws of the Dominican Republic.

36.     CELLWAVE NETWORKS, LTD. ("**CELLWAVE**"), is a corporation organized and existing under the laws of Gibraltar.

EXHIBIT A

37.     WWIN INTERNATIONAL, LTD. ("**WWIN**"), is a corporation organized and existing under the laws of St. Vincent and the Grenadines.

38.     MELLESINO C. POR A. ("**MELLESINO**"), is a corporation organized and existing under the laws of the Dominican Republic.

39.     TENEDORA WESSEX DOMINICANA, S.A. ("**TENEDORA**"), is a corporation organized and existing under the laws of the Dominican Republic.

40.     SUN VILLAGE CONSTRUCCIONES, S.A. ("**SVC**"), is a corporation organized and existing under the laws of the Dominican Republic.

41.     SUN VILLAGE JD HOLDING, INC. ("**SVJD HOLDING**"), is a corporation organized and existing under the laws of the State of Delaware.

42.     1211766 ALBERTA LTD. ("**ALBERTA**"), is a corporation organized and existing under the laws of the province of Alberta, Canada.

43.     TRIPALMS REAL ESTATE INC. ("**TRIPALMS**"), is a corporation organized and existing under the laws of the province of Ontario, Canada.

44.     OCEAN PALMS REAL ESTATE (SVG) INC. ("**OCEAN**"), is a corporation organized and existing under the laws of St. Vincent and the Grenadines.

45.     Upon information and belief, EMIRI, EMISVI, ERMSVG, HSVHDO, EMICOFRESI, KAHEBRAM, EMI, SVJD, XARA, EMH, YUBASO, ILT, CANADAIGUA, HSV HOLDINGS, MIRADOR, TENEDORA, VSP, DCS, ERH, ETH, LLCORP, 408, BERTUS, ORANGEVILLE, COFRESCO, CCW, MPS, COFDEV, MONCEY, CELLWAVE, WWIN, MELLESINO, TENEDORA, SVC, SVJD HOLDING, ALBERTA, TRIPALMS and OCEAN (collectively the "**Elliot Group Companies**"), are corporations which operate as part of a larger group of companies which are substantially owned and/or controlled by defendants, Frederick Elliott and Derek Elliott (collectively, the "**Elliotts**").

46.     The Elliotts operate under a maze of corporations including the Elliott Group Companies and other as of yet unidentified companies acting in active concert with, and as agents for, the Elliotts and the Elliott Group Companies. These companies were used at times

EXHIBIT A

interchangeably by the Elliotts, as part of carrying out their fraud and their stated purpose of being "judgment proof."   *See* Composite Exhibit "A".  Thus, the companies changed corporate structures and names on numerous occasions.

47.   Further, upon information and belief, the Elliotts used the Elliott Group Companies as one collective "piggy bank," taking funds from one company indiscriminately to pay the obligations of another, such that the Elliott Group Companies have a unity of interest with the Elliotts and each other to an extent that the separate identities of each no longer exist or should not be recognized independently of one another.

48.   Thus, the Elliott Group Companies are all mere alter egos and agents for the Elliotts, which were used as an integral part of the racketeering enterprise alleged below, were used to effectuate the fraudulent and unlawful acts as alleged in this Complaint, and/or were formed for the purpose of shielding the Elliotts (by their own written admission) from personal liability and accountability and to perpetrate the fraud upon Plaintiffs and other purchasers of real estate investments offered by the Elliotts and the Elliott Group Companies. *See* Composite Exhibit "A".

49.   DE MARCHENA KALUCHE & ASOCIADOS ("**DMK**") is a firm organized and existing under the laws of the Dominican Republic and which actively participated in the business activities of the Elliot Group Companies, including but not limited to acting as a payment clearing agent for purchase monies received from purchasers of real estate interests from the Elliot Group Companies.  DMK also created various business entities which were used by the Elliott Group Companies to improperly transfer and hide assets.

50.   ENRIQUE DE MARCHENA ("**De Marchena**") is an individual and, upon information and belief, a resident of the Dominican Republic.  De Marchena is a principal in DMK, and is, upon information and belief, a member of the Board of Directors of the Elliott Group Companies.   De Marchena also created various business entities which were used by the Elliott Group Companies to improperly transfer and hide assets

51.   VICTOR CABRAL ("**Cabral**") is an individual and, upon information and belief,

EXHIBIT A

a resident of the Dominican Republic.  Upon investigation, information, and belief, Cabral participated and assisted in the racketeering and fraudulent and wrongful conduct of the Elliott Group Companies, Frederick Elliott and Derek Elliott, and was on the Board of Directors of EMIRI.

52.     N.W.N. GROUP, LLC, also known as NET WEALTH NAVIGATORS ("**NWN**") is a limited liability company organized and existing under the laws of the State of Nevada.

53.     MICHAEL LAWTER ("**M. Lawter**"), is an individual and, upon information and belief, a resident of Nevada.  M. Lawter together with his wife, Tippy Tan Lawter directs the business and other activities of, and exercises control over, NWN.

54.     TIPPY TAN LAWTER ("**T. Lawter**"), is an individual and, upon information and belief, a resident of Nevada.  T. Lawter together with M. Lawter directs the business and other activities of, and exercises control over, NWN.

55.     FREDERICK ELLIOTT ("**Frederick**"), is an individual and, upon information and belief, a resident of the province of Ontario, Canada.  Frederick directs the business and other activities of, and exercises control over, the Elliott Group Companies.

56.     DEREK ELLIOTT ("**Derek**"), is an individual and, upon information and belief, a resident of the Dominican Republic.  Derek directs the business and other activities of, and exercises control over, the Elliott Group Companies.  Additionally, Derek is Frederick's son.

57.     Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction over the federal RICO claims (18 U.S.C. § 1961, *et seq.*).  The Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

58.     Pursuant to 28 U.S.C. § 1391, and 18 U.S.C. § 1964, venue is proper in the Southern District of Florida.

59.     This Court has jurisdiction over Frederick, Derek and the Elliott Group Companies and all other Defendants pursuant to the Florida Statute §§ 48.193(1)(a), (1)(b), (1)(f)(1), and (2) because of the acts alleged in this complaint, and because they engaged in substantial and not isolated business activities in the State of Florida, including, but not limited

EXHIBIT A

to, selling real estate products to Plaintiffs, maintaining an office address in Miami, Florida at EPS C-757, 8260 N.W. 14th Street, Doral, Florida 33126 to which both purchasers' payments and executed purchase documents were sent in furtherance of the sale of the real estate products, maintaining a bank account at the Citibank branch located in Tamarac, Florida, retaining a Florida graphic design firm to aid in the marketing efforts related to the sale of their real estate products, and utilizing the services of a Florida title insurance company relating to the acquisition of land for its development business.

## GENERAL ALLEGATIONS

60.     The Elliott Group Companies, Frederick and Derek (collectively the "**Elliott Group Defendants**") are in the business of developing and selling real property and real property interests in resorts located in the Dominican Republic.

61.     In addition to developing and selling real property, the Elliott Group Defendants operate and manage the resorts they develop, including hotels, residence properties, and the ancillary amenities to such real property.

### The Resort Properties

### *The EMI Sun Village Resort & Spa*

62.     Frederick and Derek hold themselves out as successful real estate developers, claiming to have developed properties throughout the United States and Canada.

63.     In 1987, Frederick solicited a group of investors to begin the process of acquiring raw land in the Dominican Republic for future development as a hotel/resort.  As part of his plan, Frederick intended to acquire five (5) Dominican Republic corporations which owned real property in a section of Puerto Plata, Dominican Republic commonly known as Cofresi Beach (the "**Cofresi Parcel**").

64.     The six (6) companies that own the land that comprised the Cofresi Parcel are:

     a.       ILT;
     b.       CANADAIGUA;
     c.       HSV HOLDINGS;
     d.       MIRADOR;
     e.       TENEDORA; and

EXHIBIT A

        f.     VSP.

These six (6) companies are referred to as the "**Cofresi Parcel Companies**."

65.     Upon investigation, information and belief the Cofresi Parcel Companies are now ultimately beneficially owned by EMISVI.

66.     In late 1999 and early 2000, Frederick and Derek proceeded to complete the acquisition of the Cofresi Parcel Companies, so as to enable the Elliott Group Defendants to develop the land.   Their original intent was to develop villas and/or small homes for sale to the public, including persons throughout the United States, on the Cofresi Parcel.

67.     However, in 2000-2001, Frederick and Derek were approached by Hacienda Resorts which had a resort located on an adjacent parcel of land.   Hacienda Resorts offered that, if the Elliott Group Defendants constructed a 300 room resort on the Cofresi Parcel, then Hacienda Resorts would fill those rooms with guests, offering to pay the Elliott Group Defendants on a triple-net basis.

68.     In 2001, the Elliott Group Defendants reached an agreement with Hacienda Resorts and developed a resort property known as the EMI Sun Village Resort & Spa (the "**Sun Village Resort**"), located on Cofresi Beach in Puerto Plata, Dominican Republic.   The Defendants described this location as a "secluded area with spectacular views of the Atlantic Ocean."  The Sun Village Resort offered 300 rooms, master suites, and luxury villas; seven pools and roman tubs, children's pools, and a waterslide; five international restaurants, and nine bars; among other amenities.

69.     The Elliott Group Defendants, and, more specifically, Frederick and Derek, have repeatedly represented to persons throughout the United States, including Plaintiffs, that they raised the capital necessary to build the Sun Village Resort from private investors who bought equity shares in EMISVI.   Upon investigation, information and belief the Elliott Group Defendants raised approximately $32 Million from just under 1600 shareholders throughout the world during the period 2001-2004.  This was done through presentations personally made by Frederick and Derek to large groups of prospective purchasers, often as invited speakers on

EXHIBIT A

cruise ships where such cruises were themed as being targeted to persons interested in international investing.  Upon information and belief, these equity shares were sold only in the Dominican Republic.

70.     Notwithstanding having raised over $32 Million in capital, and nearly three (3) years after the launch date of the resort, as of early 2004, the Sun Village Resort was only approximately 75% complete.  Further, the portions of the Sun Village Resort that were open to the public were already in need of repairs.

71.     Moreover, in addition to building the 300 guest rooms, the Elliott Group Defendants over-built the adjoining amenities.   The amenities were sufficient to support a 500 room resort.  As such, Sun Village Resort was expensive to operate.

72.     Consequently, upon information, investigation and belief the Sun Village Resort operations were insufficient to fund completion of the resort, or to even pay for maintenance of the capital improvements to the resort.

73.     In 2004 Frederick and Derek were having difficulty raising the remaining capital needed to complete the Sun Village Resort through the vehicle they had previously used (selling shares in the Dominican Republic in EMISVI).

74.     Consequently, upon information and belief, the Elliott Group Defendants and specifically Frederick and Derek, devised a plan to fund the completion of the Sun Village Resort through the development and sale of timeshare interests in the existing hotel through a product referred to as the "**Residence Product**".   The Residence Product was not an equity product, but rather the sale of an interest in and/or right to use, the real property.

75.     The Residence Product allowed individuals to purchase a timeshare interest in the Sun Village Resort.

76.     Upon investigation, information and belief the Elliott Group Defendants, at the direction of Frederick and Derek, created, in-house, a series of marketing brochures and literature, and developed a sales program to sell these Residence Products to the general public, including persons throughout the United States.

EXHIBIT A

77.     These marketing brochures, literature and other documents made representations to prospective purchasers as to the nature and character of the Residence Product being offered for sale by the Elliott Group Defendants.

78.     Upon investigation, information and belief the Elliott Group Defendants were solely responsible for the content of the marketing materials, and it was these materials that the sales personnel relied upon and provided to prospective purchasers, including persons throughout the United States.

79.     As part of its marketing program, the Elliott Group Defendants offered prospective purchasers a trip to the Sun Village Resort to see the project and attend sales presentations.

80.     Owners would then purchase a specific one or two bedroom "luxury" residence suite, allotted by the resort and applied to a specific season, *i.e.* Winter or Summer.  The owner would then have the option to use their room during their allotted time period.

81.     If the owner (the "**TR Timeshare Owner**") did not use the room during their allotted time period, the Elliott Group Defendants rented the room as a vacation package through travel agencies, such as Expedia and Travelocity.  The revenue generated from renting the room would then be divided between the Elliott Group Defendants and the TR Timeshare Owner.  The TR Timeshare Owner's share of the revenue, described as a "non-use" or "**NUF**" fee, would be paid on a quarterly basis by the Elliott Group Defendants.

82.     The Elliott Group Defendants retained the option to buy back the TR Timeshare Owner's suite after five (5) years, at the owner's original purchase price.  If the owner opted to sell the suite prior to the expiration of the five (5) year option, EMIRI would place the suite week in an on-site sales program.  Costs associated with this sale would be deducted from the TR Timeshare Owner's sale proceeds on the basis of 20% of the greater of the original purchase price and actual sales price (if higher than the original price).

83.     If the Elliott Group Defendants elected not to return the principal sum at the end of the five (5) year period, then the TR Timeshare Owner would have the right to collect a NUF

EXHIBIT A

fee equal to the existing NUF fee plus a 20% premium each quarter, until the principal sum was paid.

84.     Upon information and belief the Residence Product sales contracts varied over time, including, but not limited to, providing differing rates of NUF to be paid to the TR Timeshare Owner.   In addition, the sales contracts did not state a percentage return, but expressed NUF payments in dollar increments.   For example, a $10,000.00 timeshare interest purchased with an election not to use by the TR Timeshare Owner would result in an annual NUF of $800 paid in quarterly payments.

85.     Upon information and belief from Spring 2004 through the first quarter of 2008, the Elliott Group Defendants made all quarterly NUF payments.

86.     Upon investigation, information and belief the Elliott Group Defendants sold over $64 Million worth of Residence Product at the Sun Village Resort to persons throughout the United States, including Plaintiffs.

87.     As part of their sales efforts, the Elliott Group Defendants represented to Plaintiffs and other prospective purchasers that the monies being raised through the sale of the Residence Product were being used for new construction and improvements to the existing Sun Village Resort.

88.     Despite raising $96 Million to date ($32 Million in equity, and approximately $64 Million in sales of Residence Product), the Sun Village Resort remains significantly incomplete. There are two buildings where, although the exterior structure is finished, the room interiors are incomplete, the rooms remain unfurnished and are, therefore, uninhabitable.

89.     Despite the above deficiencies, for a period of time, everything seemed to progress normally.   Every time TR Timeshare Owners briefly visited the Sun Village Resort, they would see what appeared to be major capital improvements to the Sun Village Resort in virtually every area.   The biggest improvements were a new spa and spa suites renovation which included a work-out room, spa treatment rooms, salon, pool, etc.

90.     In addition to major improvements in each room (marble finishes, beds, furniture,

EXHIBIT A

décor, flat screen televisions, etc.), the Elliott Group Defendants also built several restaurants, a huge open air theatre with a bar, lounge, and shops.

91.     However, despite representations to the purchasers and owners of the Residence Products, the Sun Village Resort was operating at a loss, and the Elliott Group Defendants were funding the resort's operating losses from the sales of timeshares and Residence Products.  Upon information and belief, the resort's operating cash losses were between $1 and $2 Million annually.  Moreover, upon information and belief, the Elliott Group Defendants were funding the NUF payments to earlier investors using the proceeds of sales to later investors.

### *The EMI Residence*

92.     Located inside EMI's Sun Village Resort, the EMI Residence was "designed with impeccable detail for the sophisticated Caribbean vacationer" and was scheduled to open in the Fall of 2006. The Elliott Group Defendants described the EMI Residence as a "limited opportunity for ownership in the exclusive enclave of EMI's luxury vacation residences."  The EMI Residence was to consist of 198 one and two bedroom luxury master suites and spacious studios.

93.     However, of the 198 planned suites, only 108 units have been constructed.

94.     While the sales of the EMI Residence originally commenced as a timeshare product, over time the Elliott Group Defendants created another scheme to convert these units to a fractional ownership product (with each unit being divided into 13 fractions).    One reason for the conversion was to allow the Elliott Group Defendants to reduce their NUF payment obligations to investors whom had initially received these payments from the proceeds of sales to later investors.

95.     EMI Residence owners were told by the Elliott Group Defendants that by converting from a timeshare ownership with a NUF, they would become "secured" because their interests would become deeded fractional interests.  In addition, the EMI Residence timeshare owners were told by the Elliott Group Defendants that they could place their fractions into a rental pool.

EXHIBIT A

96.     However, in reality, upon conversion, the Elliott Group Defendants' requirement to make a quarterly NUF payment ceased, and unlike the NUF obligation which was represented provided for guaranteed payment on a certain schedule, the rental pool provided no guarantee of regular payments to EMI Residence owners.

97.     Significantly, however, despite convincing a substantial number of EMI Residence timeshare owners to elect to convert to fractional ownership, the Elliott Group Defendants (upon investigation, information, and belief) have yet to complete the process of condominiumization of the various elements of the fractional ownership property that was formerly known as the EMI Residences.

### *The Juan Dolio Property*

98.     In late 2004, the Elliot Group Defendants decided to pursue an opportunity to purchase an existing hotel property for re-development.

99.     The property, containing an abandoned Sheraton hotel on the waterfront, was located at Juan Dolio in the Dominican Republic (the "**Juan Dolio Property**").

100.    The former hotel had 268 rooms, was not operational and was owned by two banks, Banco de Reservas and Banco del Progreso.  The banks had taken over the hotel from the prior owner/operator.

101.    The Elliot Group Defendants then devised a plan whereby they would re-develop the Juan Dolio Property as a high-end resort with approximately 241 rooms.  Again, the Elliott Group Defendants created a scheme to sell real estate interests in the Juan Dolio Property to prospective purchasers located throughout the United States.

102.    As part of the sales and marketing of the Juan Dolio Property, the Elliot Group Defendants misrepresented to prospective purchasers, including Plaintiffs and other persons located throughout the United States, that they already owned the property free and clear, and wanted to raise capital for the re-development of the property through the sale of ownership interests in the resort.

103.    However, upon investigation, information and belief the Elliot Group Defendants

EXHIBIT A

did not own the Juan Dolio Property free and clear, but had an agreement to purchase it for $12.5 Million.

104.    Of the $12.5 Million purchase price, the Elliot Group Defendants paid $5.5 Million in cash, and assumed debt of $8.5 Million with Banco de Reservas and Banco del Progreso.

105.    The Elliot Group Defendants sold approximately $3.5 Million worth of timeshare interests ("**Juan Dolio Residence Product**"), which, upon information and belief, was used towards the acquisition of the Juan Dolio Property.

106.    Sales revenue generated by Juan Dolio Residence Product sales was supposed to be used for construction/renovation and remodeling of the Juan Dolio Property.

107.    Upon information and belief, the Elliot Group Defendants may have sold as much as $50 Million worth of Juan Dolio Residence Products.

108.    As part of the Juan Dolio project, the Elliot Group Defendants created a new product called "**Passport**".  The Passport offered condo hotel ownership with a revenue sharing component that would kick-in after the hotel was opened.  Sales of the Passport began in October 2005.

109.    The Passport was supposed to provide funding to cash out the Juan Dolio Residence Product purchasers, essentially paying them back after using their money to construct the hotel and eliminating the need for the Elliott Group Defendants to continue service of NUFs.

110.    At first, prospective purchasers filled out a "**Deposit Agreemen**t" reserving their units in 1/13 fractions at a time.  A true and correct copy of the Deposit Agreement is attached as Exhibit "B".[1]

111.    Prospective Passport purchasers placed an initial 50% deposit.  The 50% balance would be due at closing.

---

[1] Copies of one Plaintiff's purchase documents are attached as exhibits to this amended complaint.  Attaching all Plaintiffs' purchase documents is extremely voluminous.  In addition, the parties are in possession of all relevant purchase documents as they should have been kept in the ordinary course of business. To the extent any party claims not to be in possession of each Plaintiffs' purchase documents, the documents are available for review and inspection at the undersigned's office at a mutually convenient date and time.

EXHIBIT A

112.    The inventory was sold in phases, starting with a Founders Phase, Phase 1, Phase 2, and then a Grand Opening Phase.

113.    The Deposit Agreement contains several material terms that the Elliot Group Defendants have violated and never intended to abide by, including but not limited to:

      a.     Section 6(b) promised purchasers "fee simple deeded title".  This was later changed by the Elliott Group Defendants to be a "beneficial interest" in a trust that purportedly holds title.

      b.     Section 6(e) provided for a "Rental Option" to benefit purchasers. However, because the Elliott Group Defendants diverted money that was to be used to complete the Juan Dolio project, the hotel is admittedly only "60%" completed and therefore, no rental income has been earned.

      c.     Section 6(f) states that "All Deposits will receive 5% interest until Hotel opens".   Accordingly, all prospective purchasers should have been accruing, and should continue to accrue, 5% interest on their deposits until the hotel opens.  Upon information and belief, however, many prospective purchasers have not been paid any of this interest.  Some prospective purchasers were subsequently induced to sign what were described to them as "closing documents" so that the 5% accrued thus far would cease to run.

      d.     Section 7(a) states that the deposit amount is a "down payment" and not a purchase of one half of the fractions reserved.

      e.     Section 7(c) provides that "All principle [sic] and interest payments are waived until the Hotel opens."  This written promise was materially relied upon by all Passport prospective purchasers who put 50% down to their substantial detriment.

114.    In addition, the closing paragraph on the last page of the Deposit Agreement references a "**Prospectus**" which Plaintiffs have not received.

115.    The 5% due is also reconfirmed as to be paid "as part of the Hotel opening" at which time the financing is also "initiat[ed]".

116.    Despite not having completed the redevelopment and re-opening of the Juan Dolio Property, the Elliot Group Defendants induced prospective purchasers, throughout the United States to close early on the acquisition of the fractional ownership interests.   To induce the prospective purchasers throughout the United States to "close", the Elliot Group Defendants offered to reimburse prospective purchasers for airfare to the Dominican Republic and provide them with two (2) days hotel accommodations, including food and beverages, free of charge.

EXHIBIT A

117.     During their stays, prospective purchasers executed closing documents drafted by and presented to the purchasers by the Elliot Group Defendants.   These closing packages included closing statements, management agreements, and promissory notes whereby prospective purchasers obligated themselves to pay the remaining 50% of the purchase price for the fractional interests.

118.     To further induce the prospective purchasers to "close" early, the Elliot Group Defendants expressly represented to the prospective purchasers that no payments would be due on the promissory notes until the Juan Dolio project re-opened and was operational.

119.     This was confirmed in writing on the front page of the "closing documents" which contained a summary of what was owned by the purchaser and contained the statement that no payments on notes would be due until the Juan Dolio project opened.  A true and correct copy of the Closing Document Summary is attached as Exhibit "C".

120.     When prospective purchasers asked about the due date listed on the notes, the Elliot Group Defendants told them that they anticipated opening the Juan Dolio hotel before the date on the loan documents.

121.     Prospective purchasers relied upon these verbal and written representations by the Elliott Group Defendants in executing the promissory notes.

122.     To date the Juan Dolio project has not been completed and officially re-opened.

123.     Upon information and belief to date, the Elliot Group Defendants have sold approximately $72 Million of Passport product for the Juan Dolio project.  Given the 50% down payment which was an integral part of sales of the Passport product, the Elliot Group Defendants collected approximately $36 Million in cash from sales from persons within and outside of the United States.

124.     Yet despite this, the hotel renovations are at best approximately 60% complete and the original developer loans on the Juan Dolio Property have not even been satisfied.

**The Elliotts' Scheme to Defraud**

125.     Upon information and belief, the Juan Dolio area of the Dominican Republic has

EXHIBIT A

appreciated considerably in the time since the Elliott Group Defendants began selling real estate interests in the Juan Dolio project.

126.    Despite having obligations to shareholders, real estate buyers and others, including Plaintiffs, Frederick and Derek, utilized the Elliot Group Companies as their own personal "piggy bank", extracting large sums of monies from these companies and diverting the funds to companies where they were the sole shareholders and/or to pay for their own personal expenses and projects.

127.    Unbeknownst to anyone outside the Elliot Group Defendants, each time that cash flow would begin to slow down, Frederick and Derek would merely conceive of a new project or scheme to raise money to maintain their lifestyle.

128.    Thus, when the income stream from the sale of timeshares at Sun Village Resort began to slow down, the Elliott Group Defendants conceived the EMI Residence (later known as the **Maxim Bungalows**).  When sales of the Maxim Bungalows peaked, the Elliott Group Defendants conceived the Juan Dolio Project and began sales of the Juan Dolio Residence Product.  Following that, the Juan Dolio Passport was conceived and sold.

129.    Despite raising, upon information and belief, over $170 Million from sources within and outside of the United States, including Plaintiffs, the Elliott Group Defendants have yet to complete a single one of the various projects that they have commenced, and have now suspended payments due to real estate purchasers, including Plaintiffs.

130.    Instead of utilizing the funds raised in the manner in which they represented to purchasers that they would do so, the Elliott Group Defendants paid themselves massive fees and diverted funds to acquire personal assets, maintain their personal lifestyle, pay personal debts and for personal projects.

131.    In the case of Sun Village Resort, despite the fact that the resort was never operating profitably, upon information and belief, Frederick and Derek authorized the payment of a management fee of 5% of the gross income of the Sun Village Resort to the management company they controlled—EMIRI.

EXHIBIT A

132.    Additionally, despite the fact that they retained an outside professional sales force to sell the various real estate products, the Elliott Group Defendants would, upon information and belief, nonetheless pay to themselves a "commission" or "override" from each sale, often in an amount equal to the sales commission earned and paid to the actual sales force.

133.    In addition to the commissions being paid to the actual sales personnel, on each of the various projects, additional overrides would be paid under the guise of commissions, including payments to:

    a.    EMISVG in amounts ranging from 5% to 20% of the purchase price;

    b.    WWIN of 1% of the purchase price;

    c.    Michael Fitzpatrick of .50% of the purchase price of sales at Sun Village Cofresi, and .25% of the value of Maxim Bungalows at Cofresi which were converted to fractional interests;

    d.    An override ranging between 1.50% and 3.50% of the purchase price being paid to the VP of Hospitality, the Sun Village Cofresi Hotel operating account, to pay for marketing materials and to pay for Software and Owner-Services Accounting; and

    e.    An override of between 1.0 % and 1.50% of the purchase price payable to the Elliott Group Companies legal team on sales of Maxim Bungalows at Cofresi, and Maxim Bungalows at Juan Dolio;

For example, on sales of the Juan Dolio Passport, the Elliott Group Defendants collected a commission of 20 percent (20%) of the gross sales value of each Juan Dolio Passport sold. Thus, from a $10,000 Juan Dolio Passport Product sale, on which a $5,000 down payment was received, the Elliott Group Defendants would immediately pay themselves $2,000.

134.    These monies, which were fraudulently diverted by the Elliott Group Defendants, were not utilized to pay the legitimate expenses of the Sun Village Resort and the Juan Dolio project, such as legitimate operating expenses, payments of NUF, payment of renovation expenses and other items.

135.    Instead, these fraudulently diverted funds were misdirected to:

    a.    Pay $1.5 Million to a movie production called "Man About Town" so that Derek would receive credit as producer of the film. Additional sums were diverted to fund a movie production called "Lovewrecked", and to create a film festival in the Dominican Republic;

EXHIBIT A

b.      Pay over $1 Million of Derek's personal gambling debts at Rio Resort and Casino in Las Vegas, Nevada;

c.      Acquire a 1996 Prevost mobile home at a cost of over $300,000 for Frederick and Derek to use during their various trips to the United States;

d.      Pay for and operate a private plane, a 2006 Mooney Bravo GX, utilized by Frederick and Derek;

e.      Invest in a joint venture for the development of a brand of cigars referred to as "Artisan Cigars" or "Artisan Selection Cigars";

f.      Acquire and operate a private yacht, "The Independence" for approximately $520,000, which was frequently used personally by Derek;

g.      Fund a $7.5 Million down payment in October 2006, and a second $7.5 Million payment in October 2007, to acquire a 22,500 square meter parcel of land in a section of the Dominican Republic known as Miches – retaining ownership of the land (initially in a company controlled by Frederick and Derek); and

h.      Sustain and then segregate for separate development a parcel of land adjacent to the Sun Village Resort in Cofresi, commonly referred to as Treasure Bluff (originally part of the parcel of land transferred to EMISVI), and which the Elliott Group Defendants are now seeking to benefit from by selling at an asking price of $27.5 Million.

### The Elliotts' Misrepresentations

136.    To induce Plaintiffs and other purchasers to buy their real estate products, the Elliott Group Defendants made material misrepresentations about the products being sold and themselves.  These include, but are not limited to, the following:

a.      That the real estate product being purchased was a safe investment. This was false because purchasers are not receiving the payments that the Elliott Group Defendants promised to make, including NUF payments, and have refused to return monies of purchasers requesting it.

b.      That no fees or maintenance expenses would be required.  Despite this representation by the Elliott Group Defendants in marketing the real estate products, upon information and belief the actual documents created by the Elliott Group Defendants to create these real estate products (and which were not shown to Plaintiffs or other purchasers) provide that these residential interests will be converted to fractional ownership.

c.      That the purchasers were making a real estate investment that would render guaranteed regular NUF payments.    Upon information and belief the actual documents created by the Elliott Group Defendants to create these real estate products (and which

EXHIBIT A

were not shown to Plaintiffs or other purchasers), provide that under certain circumstances, at the Elliott Group Defendants' discretion, the Elliott Group Defendants could elect not to make payments. In fact, despite the "guarantee" of NUF payments, the Elliott Group Defendants ceased making NUF payments since the first quarter of 2008.

d.     That construction on the Sun Village Resort was complete and that construction on the Juan Dolio Project was substantially complete. As alleged above, both properties remain substantially unfinished.

e.     That Plaintiffs and other purchasers were acquiring a liquid real estate investment. This was false, as purchasers were allowed to sell only through the Elliott Group Defendants' onsite sales program (and not directly to third parties), and purchasers seeking to resell were required to pay the Elliott Group Defendants a fee, usually in an amount equal to 20% of the resale value.

**The Elliotts' Latest Scheme to Raise Cash**

137.    Finding themselves unable to sustain the scheme to defraud by selling new real estate products, upon information and belief the Elliot Group Defendants have come up with a new plan to raise cash from persons throughout the United States to sustain their lifestyles.

138.    Upon information and belief the Elliot Group Defendants have decided—notwithstanding their representation that the Juan Dolio Passport promissory notes were not due until the Juan Dolio project reopened – to seek collection of the notes from purchasers.

139.    To do so, upon information and belief the Elliot Group Defendants have created (or caused to be created) a collection company, Aviati.

140.    The Elliot Group Defendants have now allegedly sold the notes to Aviati. Aviati has declared the notes due, despite the fact that the condition precedent to payment – the completion and reopening of the Juan Dolio project – has never been satisfied. Demand for payment is being made to persons throughout the United States.

141.    Further, the Elliot Group Defendants have communicated to owners of the Passport that Aviati intends to begin "foreclosing" upon the notes, and stating that purchasers will lose the deposit monies they paid, unless these purchasers execute additional agreements (containing different and less favorable terms) to the purchasers.

142.    Upon information and belief the Elliot Group Defendants' plan, as to those

EXHIBIT A

noteholders who do not pay the notes in response to the demand, is to allegedly foreclose their interests and then attempt to re-sell those real estate interests (either as fractions or as entire condominium units).

143.    Separately, to allow the Elliot Group Defendants to retain the monies raised from the sale of Residence Products, without having to make the required payments to purchasers, the Elliott Group Defendants began to "offer" purchasers the option to "convert" the Residence Products to fractional ownership interests under which the Elliott Group Defendants would have no obligations to make any payments to such purchasers post-conversion.  This "option" is being offered to persons throughout the United States.

144.    To coerce the purchasers to accept the conversion option, the Elliott Group Defendants told purchasers that conversion was the only way to "fully preserve their asset" and make their real estate interest more "secure", and that if they converted, then the converted purchasers would be entitled to offer their fractional interests for re-sale.

145.    However, even this "re-sale" program is a further scheme to defraud, as there are several instances where owners who have successfully sold their fractional interests did not receive the proceeds from those sales.  Instead the Elliott Group Defendants diverted the proceeds from those re-sales, using the monies for their own purposes.

146.    The Elliott Group Defendants have attempted to coerce the purchasers into accepting their demands that purchasers, including Plaintiffs, "convert" by threatening that those that do not "convert" and who attempt to assert their legal rights will "forfeit" their interests and collect none of their investment back from what the Elliott Group Defendants themselves describe as a maze of "judgment proof" companies.  *See* Composite Exhibit "A".  In essence, Plaintiffs and the other purchasers were told that if they participated in a lawsuit such as the present action, they would lose their investments.

147.    Moreover, in 2008 the Elliott Group Defendants were facing increasing questions about the uses of the proceeds of the real estate sales, questions as to why it appeared that the work supposedly being funded from such sales seemed to go undone, as well as questions as to

EXHIBIT A

the nature and legitimacy of their business operations.

148.    When these questions were not satisfactorily answered, the existing professional sales force which had been selling the Elliott Group Companies' real estate products throughout the United States, ceased selling such products and severed its relationship with the Elliot Group Defendants.

149.    Needing to continue their present day sales to allow them to fund the payment of NUF fees to prior purchasers and otherwise fund their illicit activities, the Elliott Group Defendants, conspired with their Dominican Republic attorneys, De Marchena and DMK, to make it seem like all monies from new sales, conversions, and re-sales were going into an escrow account specifically set up by DMK for Elliott Group Defendant sales.

150.    However, upon information and belief Frederick and Derek have the ability to indiscriminately direct the disbursement of monies from the supposed DMK "escrow" account, for use to fund the activities of the Elliott Group Defendants.

151.    Further, following the existing professional sales force's decision to end its relationship with the Elliott Group Defendants, M. Lawter, T. Lawter and NWN – who had formerly been part of that same sales force that terminated their relationship with the Elliott Group Defendants – began to conspire with the Elliott Group Defendants in furtherance of the Elliott Group Defendants' scheme to defraud.   T. Lawter, M. Lawter and NWN acted in active concert with the other conspirators and continue even today to actively attempt to sell the Elliott Group Defendants' products in furtherance of this conspiracy and the various schemes to defraud investors.  Also in furtherance of the Elliott Group Defendants' scheme to defraud, M. Lawter, T. Lawter and NWN have acted, and continue to act, as agents for the Elliott Group Defendants in making representations to and communicating with purchasers of the Elliott Group Defendants' real estate products.

**The Elliotts' Poison Pill -Foreclosure of the Cofresi and Juan Dolio**

152.    On or about September 2008, upon learning that Plaintiffs were organizing themselves to initiate this lawsuit, the Elliott Group Defendants stopped making all payments

toward the mortgages on the  Cofresi and Juan Dolio Property.

153.    In or around May-June 2009, Banco del Progreso and Banco Reservas instituted foreclosure proceedings regarding the note and mortgage secured by the Juan Dolio.

154.    In or around June-July 2009, Banco Leon instituted foreclosure proceedings regarding the note and mortgage secured by the Cofresi.

155.    On September 10, 2009 Banco del Progreso and Banreservas successfully foreclosed on their mortgage in the sum of $7.7 million which was  secured by the property known as Juan Dolio. As a result, the property was auctioned for foreclosure sale.  Having received no bidders aside from the banks themselves, the property was delivered to Banreservas and Banco del Progreso.

156.    On October 7, 2009 Banco Leon successfully foreclosed on its loan which was secured by the property known as Cofresi.  As a result, the property was auctioned for foreclosure sale.  The purported winning bidder is an entity referred to as Daguama Inversiones.  However, there is some credible information that the successful bidder was an entity known as Globalia.  The relationship between Daguama Inversiones and Globalia, or for that matter, the entities' relationship with the Elliott Group Defendants is unknown at this time.  The sum of $4.5 million was paid at the foreclosure sale.

157.    In addition, the foreclosure and sale as to Cofresi was not as to the entire property known as Cofresi.  Instead the portion known as the Bungalows was sold to an entity known as Lifestyles Hacienda.   Against the   relationship between Lifestyles and the Elliott Group Defendants is unknown. In addition, it is unknown at this time whether Lifestyles paid the Elliott Group Defendants a sum certain for the Bungalows.

### The Targets of the Elliotts' Scheme to Defraud

158.    The Elliott Group Defendants targeted their scheme to defraud predominantly to prospective purchasers of real estate interests in the United States and Canada.

159.    Upon information and belief, approximately 53% of all the real estate interests sold were sold to residents of the United States located in Florida and other states.

EXHIBIT A

160.    As part of their targeted plan to defraud purchasers in Florida and the United States as a whole, the Elliott Group Defendants established bank accounts in Miami, Florida and Las Vegas, Nevada for purposes of receiving payments from purchasers of real estate interests in furtherance of the scheme.

161.    Upon information and belief, approximately 42% of all the real estate interests sold were sold to residents of Canada.

162.    All conditions precedent to bringing this action have occurred or have been waived.

163.    Plaintiffs have retained the undersigned attorneys to represent him in this action and agreed to pay them a reasonable fee for their services.

## COUNT I
### Racketeering Influenced and Corrupt
### Organizations ("RICO"), Title 18 U.S.C. § 1962(c)

164.    Plaintiffs reallege paragraphs 1 through 151 as if fully set forth herein.

### The Activities of the Elliott Enterprise

165.    Plaintiffs are now and at all relevant times has been a "person" within the meaning of 18 U.S.C. §§ 1961 (3) and 1962.

166.    Each defendant is now and at all relevant times has been a "person" within the meaning of 18 U.S.C. §§ 1961 (3) and 1962.

167.    From at least 2001, continuously through the present, Defendants and others, known and unknown, in Miami-Dade County, Florida, Puerto Plata, Dominican Republic, and elsewhere, formed an association in fact for the common and continuing purposes and goals described herein, which constitutes an "Enterprise," within the meaning of 18 U.S.C. § 1961(4) (the "**Elliott Enterprise**").   The Elliott Enterprise functions as a continuing unit within an ascertainable structure separate and distinct from that of the conduct or pattern of racketeering activity.

### Goal and Purpose

168.    The goal of the Elliott Enterprise has been, and continues to be, to perpetrate a

EXHIBIT A

fraud upon purchasers of real estate interests, and to generate illegally obtained money which has been converted into real and personal property owned by a convoluted maze of shell companies and used to create a base of operations for Frederick and Derek's other illicit, improper and/or illegal business dealings.  In operating the Elliott Enterprise, Defendants defrauded Plaintiffs of monies due them as a NUF, and by diverting monies from the operation of the Sun Village Resort and from the Juan Dolio Project, thereby unjustly enriching its members, their co-racketeers and others who assisted in defrauding Plaintiffs.  Frederick and Derek were able to accomplish their goals by misusing instrumentalities of foreign and interstate commerce, including the misuse of international wire facilities and the mails.  Each of these fraudulent acts has had a serious impact on interstate and foreign commerce because, among other things, the fraudulent activity involved transportation or communication between places in two or more states or between some place in the United States and someplace outside the United States.

169.    As an integral part of the goal and purpose of the Elliott Enterprise, its members selected Miami, Florida, as the location for activities of the Elliott Enterprise.  Miami presented the perfect location for the situs of the Elliott Enterprise.  Miami presented Fred and Derek with a sophisticated banking system with access to international financial markets, and willing bilingual professionals to assist them in their illegal pursuits.

### The Laws that Frederick and Derek Violated While They Conducted the Affairs of the Elliott Enterprise

170.    Frederick and Derek  violated federal law while engaged in the affairs of the Elliott Enterprise, as follows:

   a.    wire fraud, in violation of 18 U.S.C. § 1343;

   b.    money laundering, in violation of 18 U.S.C. § 1956;

   c.    engaging in monetary transactions in property derived from specified unlawful activity, in violation of 18 U.S.C. § 1957;

   d.    travel in interstate and foreign commerce in aid of the Elliott racketeering enterprise, in violation of 18 U.S.C. § 1952;

   e.    transportation of stolen monies, in violation of 18 U.S.C. § 2314; and

EXHIBIT A

      f.      sale or receipt of stolen monies, in violation of 18 U.S.C. § 2315.

171.    The Defendants were associated with and exerted control over the Elliott Enterprise and conducted or participated, directly or indirectly, in the conduct of the Elliott Enterprise's affairs through a pattern of racketeering activity.

### The Pattern of Racketeering Activity

172.    In furtherance of their scheme, Frederick and Derek conducted, participated in or exerted control over, either directly or indirectly, the conduct of the Elliott Enterprise's affairs through a pattern of racketeering activity, or aided and abetted, counseled, or commanded the other Defendants or related parties who did so, by engaging in at least two acts of racketeering activity that have the same or similar criminal intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated acts of racketeering activity.  The pattern of racketeering activity, which began in 2001 or before and continues through and including the date upon which this complaint is filed, and which Plaintiffs expect to continue uninterrupted, involved racketeering acts or predicate acts, including multiple violations of the federal criminal laws of the United States, which amounted to and pose a threat of continued criminal activity.

173.    These acts of racketeering or predicate acts were related to the Elliott Enterprise and had similar purposes, participants, results, victims, and methods of commission.  These  acts of racketeering activity include, but are not limited to, the following:

### Transportation of Stolen Monies in Interstate or Foreign Commerce

174.    Frederick and Derek in furtherance of and for the purpose of executing their fraudulent scheme described above, did transport, transmit, or transfer in interstate or foreign commerce, monies of the value of $5,000 or more, knowing the same to have been stolen, converted, or taken by fraud, belonging to Plaintiffs, which they knew to be stolen or taken by fraud, in violation of Title 18 U.S.C. § 2314.

### Sale or Receipt of Stolen Monies

175.    Frederick and Derek  did receive, possess, conceal, store, barter, sell, or dispose

EXHIBIT A

of money of the value of $5,000 or more, which crossed a state or United States boundary after being stolen, unlawfully converted, or taken, knowing the same to have been stolen, unlawfully converted, or taken, in violation of Title 18 U.S.C. § 2315.

## Wire Fraud

176.    Frederick and Derek having devised or intended to devise a scheme or artifice to defraud, for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, as described above, knowingly and willfully transmitted or caused to be transmitted by means of a wire communication in interstate or foreign commerce, writings, signs, signals, pictures, or sounds for (a) the purpose of executing such scheme, in violation of Title 18 U.S.C. § 1343, and for (b) the purpose of executing such scheme, through the transfer of monies, in violation of 18 U.S.C. § 1343.

## Interstate and Foreign Travel or Transportation in Aid of the Elliott Racketeering Enterprise

177.    Frederick and Derek knowingly and willfully traveled in interstate or foreign commerce or used the mail or any facility in interstate or foreign commerce, with intent to distribute the proceeds of an unlawful activity and to further an unlawful activity and otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, in violation of 18 U.S.C. § 1952.

## Laundering of Monetary Instruments

178.    Frederick and Derek did knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of specified unlawful activity, that is, the proceeds of one or more violations of Title 18 U.S.C. §§ 1343 (wire fraud), 1952 (travel in interstate and foreign commerce in aid of a racketeering enterprise), 2314 (transportation of stolen monies), and 2315 (receipt or possession of stolen monies), with the intent to promote the carrying on of specified unlawful activity, and knowing that the transaction was designed in whole or in part to conceal and disguise, the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and to avoid a transaction

EXHIBIT A

reporting requirement under State or Federal law, and that while conducting and attempting to conduct such financial transactions, Frederick and Derek knew that the property involved in the financial transaction, represented the proceeds of some form of unlawful activity, in violation of Title 18 U.S.C. §§ 1956 (a)(1)(A)(i) or (B)(i) or (ii).

179.   As part of their money laundering activities, Frederick and Derek formed defendant WWIN.   WWIN was then utilized as a pseudo-banking entity by the Elliott Enterprise to comingle both the proceeds of its illicit activities with other legitimate payments and to allow for the disbursement of the proceeds of the Elliott Enterprise's illicit activities to its members, including Frederick and Derek.

180.   By creating WWIN, the Elliott Enterprise made a network of pre-paid Visa Electron cards to distribute to both legitimate vendors and to members of the Elliott Enterprise. In this way, the monies being distributed to the members of the Elliott Enterprise could be funded through WWIN into the pre-paid Visa Electron accounts, and then be accessed through automated bank teller withdrawals and through purchases made using the Visa Electron cards

181.   One example of such disbursements to a member of the Elliott Enterprise were the over $114,000 in payments made to defendant Cabral.  Upon information and belief Cabral, was paid "off the books" as a "consultant" through one of the WWIN sub accounts linked to a Visa Electron card – although his role as a consultant was generally kept quiet.  Cabral is the ex Tourism Minister of the Dominican Republic, and was recently ordered arrested so as to serve a one (1) year prison sentence for fraud.

182.   In addition to the activities of WWIN, the Elliott Group Defendants created a series of shell corporations that had no independent business operations and whose principal purpose was to facilitate the expedited negotiation of checks and other payment instruments in furtherance of the Elliott Enterprise.  These companies, which include defendants CCW, MPS and Orangeville, were created to expedite the clearance of checks and circumvent clearance holds which had been imposed upon the then existing Elliott Group Companies by their respective financial institutions.

EXHIBIT A

**Engaging in Monetary Transactions in Criminally Derived Property over $10,000.00**

183.   Frederick and Derek did knowingly engage and attempt to engage in monetary transactions by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit, withdrawal, transfer, exchange of U.S. Currency, funds or monetary instruments, such property having been derived from a specified unlawful activity, that is, the proceeds of one or more violations of Title 18 U.S.C. §§ 1343 (wire fraud), 1952 (travel in interstate or foreign commerce in aid of racketeering), 2314 (transportation of stolen monies), and 2315 (receipt or possession of stolen monies), in violation of 18 U.S.C. § 1957.

184.   Certain other acts of racketeering activity, including but not limited to, theft, mail fraud, wire fraud, interstate and foreign travel in aid of a racketeering enterprise, transportation of stolen monies, sale or receipt of stolen monies, laundering of monetary instruments, engaging in monetary transactions in criminally derived property of a value greater than $10,000.00 and other violations of federal law that occurred, but are currently unknown to Plaintiffs.  Each such act of racketeering activity constitutes a separate act in the pattern of racketeering activity in which the Elliott Enterprise engaged.

185.   The benefits derived from the pattern of racketeering activity consist of tens, if not hundreds, of millions of dollars in funds stolen from Plaintiffs and other purchasers of timeshare interests and fractional ownership interests.

186.   Plaintiffs have been injured by reason of the foregoing.

WHEREFORE, Plaintiffs demand judgment against FREDERICK ELLIOTT, an individual; DEREK ELLIOTT, an individual; EMI RESORTS, INC, a foreign corporation; EMI SUN VILLAGE, INC., a foreign corporation; EMI RESORTS MANAGEMENT (S.V.G.), INC., a foreign corporation; HSV HOTELES DE OPERADORA, S.A., f/k/a EMI RESORTS MANAGEMENT S.A., a foreign corporation; EMI COFRESI DEVELOPMENTS, INC., a foreign corporation; KAHEBRAM, S.A., a foreign corporation; ELLIOTT MANAGEMENT INC., a/k/a EMI MANAGEMENT, INC., a foreign corporation; SUN VILLAGE JUAN DOLIO,

EXHIBIT A

INC., a foreign corporation; PROMOTORA XARA, S.A., a foreign corporation; ELLIOTT MICHES HOLDINGS, INC., a foreign corporation; INVERSIONES YUBASO, S.A., a foreign corporation; INMOBILIARIA LIRIOS DEL TROPICO, S.A., a foreign corporation; INMOBILIARIA CANADAIGUA, S.A., a foreign corporation; HSV HOLDINGS, S.A. , a foreign corporation; DESARROLLOS MIRADOR COFRESI, S.A., a foreign corporation; TENEDORA HSV [BP], S.A., a foreign corporation; VILLA SANTA PONCA, S.A., a foreign corporation; DCS DOMINICAN CONSTRUCTION SERVICES, S.A., a foreign corporation; ELLIOTT REGENT HOLDINGS, INC., a foreign corporation; ELLIOTT TOSCANA HOLDINGS, INC., a foreign corporation; LANDMARK LENDING CORPORATION, a foreign corporation; 408 CUMBERLAND HOLDINGS, INC., a foreign corporation; BERTUS MANAGEMENT, INC., a foreign corporation; ORANGEVILLE RESERVATION SERVICES, LTD., a California corporation; COFRESCO HOLDINGS, INC., a foreign corporation; CCW DOMINICANA, S.A., a foreign corporation; MPS LTD., S.A., a foreign corporation; COFRESI DEVELOPMENTS, INC., a foreign corporation; IMMOBILIARIA MONCEY, S.A., a foreign corporation; WWIN INTERNATIONAL, LTD., a foreign corporation; MELLESINO C. POR A., a foreign corporation; TENEDORA WESSEX DOMINICANA, S.A., a foreign corporation; SUN VILLAGE CONSTRUCCIONES, S.A., a foreign corporation; SUN VILLAGE JD HOLDING, INC., a Delaware corporation; 1211766 ALBERTA LTD., a foreign corporation; TRIPALMS REAL ESTATE INC., a foreign corporation; OCEAN PALMS REAL ESTATE (SVG) INC., a foreign corporation; CELLWAVE NETWORKS, LTD., a foreign corporation; VICTOR CABRAL, an individual; ENRIQUE DE MARCHENA, an individual; and DE MARCHENA KALUCHE & ASOCIADOS, a foreign corporation; N.W.N. GROUP, LLC, also known as NET WEALTH NAVIGATORS, a Nevada limited liability company,  MICHAEL LAWTER, an individual, and TIPPY TAN LAWTER, an individual,  for the damages that he suffered in an amount to be proven at trial, which as provided for by statute, is then to be trebled, plus attorneys' fees, court costs, costs of investigation, interest, and such other relief as the Court deems appropriate.

EXHIBIT A

## COUNT II
## Conspiracy to Violate 18 U.S.C. § 1962(c) in Violation of § 1962(d)

187.    Plaintiffs reallege paragraphs 1 through 186 as if fully set forth herein.

188.    From at least as early as 2001 through the present, Defendants have unlawfully, knowingly, and willfully combined, conspired, confederated, agreed, and reached an understanding with each other and with others known and unknown, to violate 18 U.S.C. § 1962(c) by conducting and participating, directly and indirectly, in the conduct of the affairs of the Elliott Enterprise, which engaged in, and the activities of which, affected, interstate and foreign commerce.

189.    The racketeering activity described in Count I was part of a sophisticated and well organized scheme wherein each of the predicate acts relates to and directly advances one or more of the purposes of the scheme, as described above.

190.    The goal of the conspiracy was to enrich Frederick and Derek, their co-conspirators, and those who aided and abetted them, at the expense of Plaintiffs, by facilitating, directing, or engaging in several overt acts, which consisted of the a pattern of racketeering activity as described in Count I.

191.    As a result of the unlawful actions of the conspiracy, Plaintiffs have been injured.

WHEREFORE, Plaintiffs demand judgment against FREDERICK ELLIOTT, an individual; DEREK ELLIOTT, an individual; EMI RESORTS, INC, a foreign corporation; EMI SUN VILLAGE, INC., a foreign corporation; EMI RESORTS MANAGEMENT (S.V.G.), INC., a foreign corporation; HSV HOTELES DE OPERADORA, S.A., f/k/a EMI RESORTS MANAGEMENT S.A., a foreign corporation; EMI COFRESI DEVELOPMENTS, INC., a foreign corporation; KAHEBRAM, S.A., a foreign corporation; ELLIOTT MANAGEMENT INC, a/k/a EMI MANAGEMENT, INC., a foreign corporation; SUN VILLAGE JUAN DOLIO, INC., a foreign corporation; PROMOTORA XARA, S.A., a foreign corporation; ELLIOTT MICHES HOLDINGS, INC., a foreign corporation; INVERSIONES YUBASO, S.A., a foreign corporation; INMOBILIARIA LIRIOS DEL TROPICO, S.A., a foreign corporation;

EXHIBIT A

INMOBILIARIA CANADAIGUA, S.A., a foreign corporation; HSV HOLDINGS, S.A. , a foreign corporation; DESARROLLOS MIRADOR COFRESI, S.A., a foreign corporation; TENEDORA HSV [BP], S.A., a foreign corporation; VILLA SANTA PONCA, S.A., a foreign corporation; DCS DOMINICAN CONSTRUCTION SERVICES, S.A., a foreign corporation; ELLIOTT REGENT HOLDINGS, INC., a foreign corporation; ELLIOTT TOSCANA HOLDINGS, INC., a foreign corporation; LANDMARK LENDING CORPORATION, a foreign corporation; 408 CUMBERLAND HOLDINGS, INC., a foreign corporation; BERTUS MANAGEMENT, INC., a foreign corporation; ORANGEVILLE RESERVATION SERVICES, LTD., a California corporation; COFRESCO HOLDINGS, INC., a foreign corporation; CCW DOMINICANA, S.A., a foreign corporation; MPS LTD., S.A., a foreign corporation; COFRESI DEVELOPMENTS, INC., a foreign corporation; IMMOBILIARIA MONCEY, S.A., a foreign corporation; WWIN INTERNATIONAL, LTD., a foreign corporation; MELLESINO C. POR A., a foreign corporation; TENEDORA WESSEX DOMINICANA, S.A., a foreign corporation; SUN VILLAGE CONSTRUCCIONES, S.A., a foreign corporation; CELLWAVE NETWORKS, LTD., a foreign corporation; VICTOR CABRAL, an individual; ENRIQUE DE MARCHENA, an individual; and DE MARCHENA KALUCHE & ASOCIADOS, a foreign corporation; N.W.N. GROUP, LLC, also known as NET WEALTH NAVIGATORS, a Nevada limited liability company,  MICHAEL LAWTER, an individual, TIPPY TAN LAWTER, an individual, for the damages that he suffered in an amount to proved at trial, which as provided for by statute, is then to be trebled, plus attorneys' fees, court costs, costs of investigation, interest, and such other relief as the Court deems appropriate.

## COUNT III
### Civil Remedies for Criminal Practices Act, Florida Statute § 772.103

192.    Plaintiffs reallege paragraphs 1 through 186 as if fully set forth herein.

193.    From at least as early as 2001 through the present, Defendants have unlawfully, knowingly, and willfully combined, conspired, confederated, agreed and reached an understanding with each other and with others known and unknown, associated together as part

EXHIBIT A

of the Elliott Enterprise, and did unlawfully, willingly, and knowingly violate Florida Statute § 772.103(3) by conducting and by participating, directly or indirectly, in the conduct of the affairs of the Elliott Enterprise through a pattern of criminal activity that involved multiple violations of the criminal laws of Florida, including organized fraud and communications fraud in violation of the Florida Communications Fraud Act, Florida Statute § 817.034, and Theft, in violation of Florida Statute § 812.014.

194.    The overall goal and purpose of the Elliott Enterprise was to enrich its members and associates, including Defendants, through the repeated commission of related criminal acts.

195.    As alleged in paragraphs 119 through 151, Defendants defrauded Plaintiffs and others throughout the United States and Canada of millions of dollars with the intent to either temporarily or permanently deprive Plaintiffs of their right to the property, in this case money, in violation of Florida Statute § 812.014(1)(a).

196.    In addition, as alleged in paragraphs 119 through 151, Defendants defrauded Plaintiffs and others throughout the United States and Canada of millions of dollars with the intent to appropriate the property, in this case money, to the Defendants' own use or to the use of a person not entitled thereto, in violation of Florida Statute § 812.014(1)(b).

WHEREFORE, Plaintiffs demand judgment against FREDERICK ELLIOTT, an individual; DEREK ELLIOTT, an individual; EMI RESORTS, INC, a foreign corporation; EMI SUN VILLAGE, INC., a foreign corporation; EMI RESORTS MANAGEMENT (S.V.G.), INC., a foreign corporation; HSV HOTELES DE OPERADORA, S.A., f/k/a EMI RESORTS MANAGEMENT S.A., a foreign corporation; EMI COFRESI DEVELOPMENTS, INC., a foreign corporation; KAHEBRAM, S.A., a foreign corporation; ELLIOTT MANAGEMENT INC, a/k/a EMI MANAGEMENT, INC., a foreign corporation; SUN VILLAGE JUAN DOLIO, INC., a foreign corporation; PROMOTORA XARA, S.A., a foreign corporation; ELLIOTT MICHES HOLDINGS, INC., a foreign corporation; INVERSIONES YUBASO, S.A., a foreign corporation; INMOBILIARIA LIRIOS DEL TROPICO, S.A., a foreign corporation; INMOBILIARIA CANADAIGUA, S.A., a foreign corporation; HSV HOLDINGS, S.A. , a

EXHIBIT A

foreign corporation; DESARROLLOS MIRADOR COFRESI, S.A., a foreign corporation; TENEDORA HSV [BP], S.A., a foreign corporation; VILLA SANTA PONCA, S.A., a foreign corporation; DCS DOMINICAN CONSTRUCTION SERVICES, S.A., a foreign corporation; ELLIOTT REGENT HOLDINGS, INC., a foreign corporation; ELLIOTT TOSCANA HOLDINGS, INC., a foreign corporation; LANDMARK LENDING CORPORATION, a foreign corporation; 408 CUMBERLAND HOLDINGS, INC., a foreign corporation; BERTUS MANAGEMENT, INC., a foreign corporation; ORANGEVILLE RESERVATION SERVICES, LTD., a California corporation; COFRESCO HOLDINGS, INC., a foreign corporation; CCW DOMINICANA, S.A., a foreign corporation; MPS LTD., S.A., a foreign corporation; COFRESI DEVELOPMENTS, INC., a foreign corporation; IMMOBILIARIA MONCEY, S.A., a foreign corporation; WWIN INTERNATIONAL, LTD., a foreign corporation; MELLESINO C. POR A., a foreign corporation; TENEDORA WESSEX DOMINICANA, S.A., a foreign corporation; SUN VILLAGE CONSTRUCCIONES, S.A., a foreign corporation; SUN VILLAGE JD HOLDING, INC., a Delaware corporation; 1211766 ALBERTA LTD., a foreign corporation; TRIPALMS REAL ESTATE INC., a foreign corporation; OCEAN PALMS REAL ESTATE (SVG) INC., a foreign corporation; CELLWAVE NETWORKS, LTD., a foreign corporation; VICTOR CABRAL, an individual; ENRIQUE DE MARCHENA, an individual; and DE MARCHENA KALUCHE & ASOCIADOS, a foreign corporation; N.W.N. GROUP, LLC, also known as NET WEALTH NAVIGATORS, a Nevada limited liability company,  MICHAEL LAWTER, an individual, and TIPPY TAN LAWTER, an individual,  for the compensatory damages that he suffered in an amount to be proved at trial, which as provided for by statute, is then to be trebled, plus attorneys' fees, court costs, costs of investigation, interest, pursuant to Florida Statute § 772.104, and for injunctive relief pursuant to Florida Statute § 895.05(6), and such other relief as the Court deems appropriate.

### COUNT IV
### Conspiracy to Violate Civil Remedies for
### Criminal Practices Act, Fla. Stat. § 772.103

197.    Plaintiffs reallege paragraphs 1 through 186 as if fully set forth herein.

EXHIBIT A

198.   All the Elliott Group Defendants, and all non-defendant co-conspirators, conspired to violate the provisions of Florida Statute § 772.103(1) and (3), as alleged above.

199.   As a result, Plaintiffs were damaged.

WHEREFORE, Plaintiffs demand judgment against FREDERICK ELLIOTT, an individual; DEREK ELLIOTT, an individual; EMI RESORTS, INC, a foreign corporation; EMI SUN VILLAGE, INC., a foreign corporation; EMI RESORTS MANAGEMENT (S.V.G.), INC., a foreign corporation; HSV HOTELES DE OPERADORA, S.A., f/k/a EMI RESORTS MANAGEMENT S.A., a foreign corporation; EMI COFRESI DEVELOPMENTS, INC., a foreign corporation; KAHEBRAM, S.A., a foreign corporation; ELLIOTT MANAGEMENT INC, a/k/a EMI MANAGEMENT, INC., a foreign corporation; SUN VILLAGE JUAN DOLIO, INC., a foreign corporation; PROMOTORA XARA, S.A., a foreign corporation; ELLIOTT MICHES HOLDINGS, INC., a foreign corporation; INVERSIONES YUBASO, S.A., a foreign corporation; INMOBILIARIA LIRIOS DEL TROPICO, S.A., a foreign corporation; INMOBILIARIA CANADAIGUA, S.A., a foreign corporation; HSV HOLDINGS, S.A. , a foreign corporation; DESARROLLOS MIRADOR COFRESI, S.A., a foreign corporation; TENEDORA HSV [BP], S.A., a foreign corporation; VILLA SANTA PONCA, S.A., a foreign corporation; DCS DOMINICAN CONSTRUCTION SERVICES, S.A., a foreign corporation; ELLIOTT REGENT HOLDINGS, INC., a foreign corporation; ELLIOTT TOSCANA HOLDINGS, INC., a foreign corporation; LANDMARK LENDING CORPORATION, a foreign corporation; 408 CUMBERLAND HOLDINGS, INC., a foreign corporation; BERTUS MANAGEMENT, INC., a foreign corporation; ORANGEVILLE RESERVATION SERVICES, LTD., a California corporation; COFRESCO HOLDINGS, INC., a foreign corporation; CCW DOMINICANA, S.A., a foreign corporation; MPS LTD., S.A., a foreign corporation; COFRESI DEVELOPMENTS, INC., a foreign corporation; IMMOBILIARIA MONCEY, S.A., a foreign corporation; WWIN INTERNATIONAL, LTD., a foreign corporation; MELLESINO C. POR A., a foreign corporation; TENEDORA WESSEX DOMINICANA, S.A., a foreign corporation; SUN VILLAGE CONSTRUCCIONES, S.A., a foreign corporation; SUN VILLAGE JD

EXHIBIT A

HOLDING, INC., a Delaware corporation; 1211766 ALBERTA LTD., a foreign corporation; TRIPALMS REAL ESTATE INC., a foreign corporation; OCEAN PALMS REAL ESTATE (SVG) INC., a foreign corporation;  CELLWAVE NETWORKS, LTD., a foreign corporation; VICTOR CABRAL, an individual; ENRIQUE DE MARCHENA, an individual; and DE MARCHENA KALUCHE & ASOCIADOS, a foreign corporation; N.W.N. GROUP, LLC, also known as NET WEALTH NAVIGATORS, a Nevada limited liability company;  MICHAEL LAWTER, an individual; and TIPPY TAN LAWTER, an individual; for the compensatory damages that he suffered in an amount to be proved at trial, which as provided for by statute, is then to be trebled, plus attorneys' fees, court costs, costs of investigation, interest, pursuant to Florida Statute § 772.104, and for injunctive relief pursuant to Florida Statute § 895.05(6), and such other relief as the Court deems appropriate.

## COUNT V
## BREACH OF CONTRACT

200.    Plaintiffs reallege paragraphs 1 through 163 as if fully set forth herein

201.    Plaintiffs agreed to purchase a timeshare interest in Sun Village Resort, the Maxim Bungalows and the Juan Dolio Project as a result of the Elliott Group Defendants' agreements contained in the Rental Agreement, dated March 16, 2008, attached as Exhibit "D" and the Vacation Interval Ownership Agreement, dated March 14, 2008, attached as Exhibit "E".

202.    Plaintiffs made this purchase upon the agreement that they would receive a quarterly NUF fee in accordance with the terms of the Rental Agreement and the Vacation Interval Ownership Agreement.

203.    The Elliott Group Defendants breached the Rental Agreement and Vacation Interval Ownership Agreement by failing to make NUF payments when due.

204.    As a result of the Elliott Group Defendants' breach, Plaintiffs have been damaged in an amount to be determined at trial.

WHEREFORE, Plaintiffs demand judgment against FREDERICK ELLIOTT, an individual; DEREK ELLIOTT, an individual; EMI RESORTS, INC, a foreign corporation; EMI

EXHIBIT A

SUN VILLAGE, INC., a foreign corporation; EMI RESORTS MANAGEMENT (S.V.G.), INC., a foreign corporation; HSV HOTELES DE OPERADORA, S.A., f/k/a EMI RESORTS MANAGEMENT S.A., a foreign corporation; EMI COFRESI DEVELOPMENTS, INC., a foreign corporation; KAHEBRAM, S.A., a foreign corporation; ELLIOTT MANAGEMENT INC, a/k/a EMI MANAGEMENT, INC., a foreign corporation; SUN VILLAGE JUAN DOLIO, INC., a foreign corporation; PROMOTORA XARA, S.A., a foreign corporation; ELLIOTT MICHES HOLDINGS, INC., a foreign corporation; INVERSIONES YUBASO, S.A., a foreign corporation; INMOBILIARIA LIRIOS DEL TROPICO, S.A., a foreign corporation; INMOBILIARIA CANADAIGUA, S.A., a foreign corporation; HSV HOLDINGS, S.A. , a foreign corporation; DESARROLLOS MIRADOR COFRESI, S.A., a foreign corporation; TENEDORA HSV [BP], S.A., a foreign corporation; VILLA SANTA PONCA, S.A., a foreign corporation; DCS DOMINICAN CONSTRUCTION SERVICES, S.A., a foreign corporation; ELLIOTT REGENT HOLDINGS, INC., a foreign corporation; ELLIOTT TOSCANA HOLDINGS, INC., a foreign corporation; LANDMARK LENDING CORPORATION, a foreign corporation; 408 CUMBERLAND HOLDINGS, INC., a foreign corporation; BERTUS MANAGEMENT, INC., a foreign corporation; ORANGEVILLE RESERVATION SERVICES, LTD., a California corporation; COFRESCO HOLDINGS, INC., a foreign corporation; CCW DOMINICANA, S.A., a foreign corporation; MPS LTD., S.A., a foreign corporation; COFRESI DEVELOPMENTS, INC., a foreign corporation; IMMOBILIARIA MONCEY, S.A., a foreign corporation; WWIN INTERNATIONAL, LTD., a foreign corporation; MELLESINO C. POR A., a foreign corporation; TENEDORA WESSEX DOMINICANA, S.A., a foreign corporation; SUN VILLAGE CONSTRUCCIONES, S.A., a foreign corporation; SUN VILLAGE JD HOLDING, INC., a Delaware corporation; 1211766 ALBERTA LTD., a foreign corporation; TRIPALMS REAL ESTATE INC., a foreign corporation; OCEAN PALMS REAL ESTATE (SVG) INC., a foreign corporation; and CELLWAVE NETWORKS, LTD., a foreign corporation for damages, and such further relief as the Court deems just and equitable.

EXHIBIT A

**COUNT VI**
**UNJUST ENRICHMENT**

205.    Plaintiffs reallege paragraphs 1 through 163 as if fully set forth herein.

206.    Plaintiffs provided the Elliott Group Defendants with a benefit in the form of a financial investment in, and a time commitment to, a real estate venture with the Elliot Group Defendants.

207.    The Elliot Group Defendants were aware of, and benefited from, the receipt of capital invested by Plaintiffs.

208.    The Elliot Group Defendants knew that Plaintiffs expected to be compensated for the capital investment they provided to the Elliot Group Defendants.

209.    However, the Elliot Group Defendants have not fully and fairly compensated Plaintiffs.

210.    Additionally, upon information and belief, the Elliot Group Defendants diverted monies which were to be properly used for the development, improvement, management, and operation of the resort properties, including the payment of NUF fees and re-payment of principal to TR Timeshare Owners.

211.    Further, upon information and belief, these monies were diverted to the personal use and benefit of Fred and Derek, including, but not limited to, paying for their participation and investment in Hollywood films, television programs promoting Fred and Derek (to the exclusion of the properties), and gambling trips to Las Vegas and other locations for the exclusive benefit and enjoyment of Fred and Derek.

212.    Under these circumstances, it would be inequitable for the Elliot Group Defendants to retain the benefits without paying for them.

213.    As a result of the foregoing, the Elliot Group Defendants have been unjustly enriched to the detriment of Plaintiffs.

WHEREFORE, Plaintiffs demand judgment against FREDERICK ELLIOTT, an individual; DEREK ELLIOTT, an individual; EMI RESORTS, INC, a foreign corporation; EMI SUN VILLAGE, INC., a foreign corporation; EMI RESORTS MANAGEMENT (S.V.G.), INC.,

EXHIBIT A

a foreign corporation; HSV HOTELES DE OPERADORA, S.A., f/k/a EMI RESORTS MANAGEMENT S.A., a foreign corporation; EMI COFRESI DEVELOPMENTS, INC., a foreign corporation; KAHEBRAM, S.A., a foreign corporation; ELLIOTT MANAGEMENT INC, a/k/a EMI MANAGEMENT, INC., a foreign corporation; SUN VILLAGE JUAN DOLIO, INC., a foreign corporation; PROMOTORA XARA, S.A., a foreign corporation; ELLIOTT MICHES HOLDINGS, INC., a foreign corporation; INVERSIONES YUBASO, S.A., a foreign corporation; INMOBILIARIA LIRIOS DEL TROPICO, S.A., a foreign corporation; INMOBILIARIA CANADAIGUA, S.A., a foreign corporation; HSV HOLDINGS, S.A. , a foreign corporation; DESARROLLOS MIRADOR COFRESI, S.A., a foreign corporation; TENEDORA HSV [BP], S.A., a foreign corporation; VILLA SANTA PONCA, S.A., a foreign corporation; DCS DOMINICAN CONSTRUCTION SERVICES, S.A., a foreign corporation; ELLIOTT REGENT HOLDINGS, INC., a foreign corporation; ELLIOTT TOSCANA HOLDINGS, INC., a foreign corporation; LANDMARK LENDING CORPORATION, a foreign corporation; 408 CUMBERLAND HOLDINGS, INC., a foreign corporation; BERTUS MANAGEMENT, INC., a foreign corporation; ORANGEVILLE RESERVATION SERVICES, LTD., a California corporation; COFRESCO HOLDINGS, INC., a foreign corporation; CCW DOMINICANA, S.A., a foreign corporation; MPS LTD., S.A., a foreign corporation; COFRESI DEVELOPMENTS, INC., a foreign corporation; IMMOBILIARIA MONCEY, S.A., a foreign corporation; WWIN INTERNATIONAL, LTD., a foreign corporation; MELLESINO C. POR A., a foreign corporation; TENEDORA WESSEX DOMINICANA, S.A., a foreign corporation; SUN VILLAGE CONSTRUCCIONES, S.A., a foreign corporation; SUN VILLAGE JD HOLDING, INC., a Delaware corporation; 1211766 ALBERTA LTD., a foreign corporation; TRIPALMS REAL ESTATE INC., a foreign corporation; OCEAN PALMS REAL ESTATE (SVG) INC., a foreign corporation; and CELLWAVE NETWORKS, LTD., a foreign corporation for damages, and such further relief as the Court deems just and equitable.

EXHIBIT A

## COUNT VII
## FRAUD IN THE INDUCEMENT

214.   Plaintiffs reallege paragraphs 1 through 163 as if fully set forth herein.

215.   Plaintiffs agreed to purchase the timeshare interests as a result of the representations made by the Elliot Group Defendants.

216.   The Elliott Group Defendants made specific representations about their extensive experience in real property development and resort management, and made repeated assurances about the success of the projects in which the timeshare interests were sold, and their specific representations that the projects would be properly run in a commercially reasonable manner.

217.   Consequently, Plaintiffs placed a great degree of trust and confidence in the Elliot Group Defendants, and fully relied on their advice and counsel with respect to numerous aspects of this venture.

218.   But for the specific misrepresentations made by the Elliot Group Defendants, Plaintiffs would not have entered into the contractual relationship with the Defendants.

219.   Plaintiffs relied upon the representations of the Elliot Group Defendants and as a result have been damaged.

WHEREFORE, Plaintiffs demand judgment against FREDERICK ELLIOTT, an individual; DEREK ELLIOTT, an individual; EMI RESORTS, INC, a foreign corporation; EMI SUN VILLAGE, INC., a foreign corporation; EMI RESORTS MANAGEMENT (S.V.G.), INC., a foreign corporation; HSV HOTELES DE OPERADORA, S.A., f/k/a EMI RESORTS MANAGEMENT S.A., a foreign corporation; EMI COFRESI DEVELOPMENTS, INC., a foreign corporation; KAHEBRAM, S.A., a foreign corporation; ELLIOTT MANAGEMENT INC, a/k/a EMI MANAGEMENT, INC., a foreign corporation; SUN VILLAGE JUAN DOLIO, INC., a foreign corporation; PROMOTORA XARA, S.A., a foreign corporation; ELLIOTT MICHES HOLDINGS, INC., a foreign corporation; INVERSIONES YUBASO, S.A., a foreign corporation; INMOBILIARIA LIRIOS DEL TROPICO, S.A., a foreign corporation; INMOBILIARIA CANADAIGUA, S.A., a foreign corporation; HSV HOLDINGS, S.A. , a foreign corporation; DESARROLLOS MIRADOR COFRESI, S.A., a foreign corporation;

EXHIBIT A

TENEDORA HSV [BP], S.A., a foreign corporation; VILLA SANTA PONCA, S.A., a foreign corporation; DCS DOMINICAN CONSTRUCTION SERVICES, S.A., a foreign corporation; ELLIOTT REGENT HOLDINGS, INC., a foreign corporation; ELLIOTT TOSCANA HOLDINGS, INC., a foreign corporation; LANDMARK LENDING CORPORATION, a foreign corporation; 408 CUMBERLAND HOLDINGS, INC., a foreign corporation; BERTUS MANAGEMENT, INC., a foreign corporation; ORANGEVILLE RESERVATION SERVICES, LTD., a California corporation; COFRESCO HOLDINGS, INC., a foreign corporation; CCW DOMINICANA, S.A., a foreign corporation; MPS LTD., S.A., a foreign corporation; COFRESI DEVELOPMENTS, INC., a foreign corporation; IMMOBILIARIA MONCEY, S.A., a foreign corporation; WWIN INTERNATIONAL, LTD., a foreign corporation; MELLESINO C. POR A., a foreign corporation; TENEDORA WESSEX DOMINICANA, S.A., a foreign corporation; SUN VILLAGE CONSTRUCCIONES, S.A., a foreign corporation; SUN VILLAGE JD HOLDING, INC., a Delaware corporation; 1211766 ALBERTA LTD., a foreign corporation; TRIPALMS REAL ESTATE INC., a foreign corporation; OCEAN PALMS REAL ESTATE (SVG) INC., a foreign corporation; and CELLWAVE NETWORKS, LTD., a foreign corporation for damages, and such further relief as the Court deems just and equitable.

## COUNT VIII
## INJUNCTIVE RELIEF

220.    Plaintiffs reallege paragraphs 1 through 186 as if fully set forth herein.

221.    Plaintiffs are entitled to injunctive relief to prevent the Elliot Group Defendants from transferring the ownership of the resort properties, from further diverting the assets of the companies away from their proper uses, taking any action to further harm the interests of Plaintiffs or taking any actions or steps to extinguish, terminate, or otherwise impair Plaintiffs' ownership interest in the timeshare and fractional interest properties in violation of the parties' agreement.

222.    Plaintiffs have a clear, enforceable interest in the real estate venture with the Elliot Group Defendants.

EXHIBIT A

223.    Specifically, Plaintiffs agreed to invest his capital in the resort properties in exchange for payment of the NUF and ultimately the return of his principal investment all derived from the operation of the resort properties.

224.    Plaintiffs performed their side of the agreement.

225.    Plaintiffs are likely to succeed on the merits in his claim against the Elliot Group Defendants due to the extensive pattern of fraud, diversion, and misappropriation of funds.

226.    Plaintiffs will suffer irreparable harm if the Elliot Group Defendants transfer the resort properties to any person other the Elliot Group Defendants, are allowed to further divert or dissipate the assets of the companies away from their proper uses, are permitted to take any action to further harm the interests of Plaintiffs, or are in any way able to extinguish, terminate, or otherwise impair Plaintiffs' ownership interest in the timeshare and fractional interest properties.

227.    Because real property is unique, and Plaintiffs' interest is therefore unique, retention of the resort properties and maintenance of the status quo as to their ownership rights is the only way that Plaintiffs can secure their rights to compensation.

228.    A monetary award is insufficient to fully compensate Plaintiffs for their capital investment in the timeshare and fractional interest properties because the proceeds from the sale or transfer of the Properties are likely to be transferred and held beyond the Court's jurisdiction.

229.    Preventing the Elliot Group Defendants from transferring the Properties or any of their assets to any third person or entity and restraining them from attempting to extinguish, terminate, or otherwise impair Plaintiffs' ownership interest in the timeshare and fractional interest properties will serve the public interest because it will compel the Elliot Group Defendants to keep their promises and agreements with Plaintiffs.

230.    No harm will be done to the Elliot Group Defendants by the injunction, as they will be required to perform their side of the contract as they initially agreed to perform.

WHEREFORE, Plaintiffs demand judgment against FREDERICK ELLIOTT, an individual; DEREK ELLIOTT, an individual; EMI RESORTS, INC, a foreign corporation; EMI

EXHIBIT A

SUN VILLAGE, INC., a foreign corporation; EMI RESORTS MANAGEMENT (S.V.G.), INC., a foreign corporation; HSV HOTELES DE OPERADORA, S.A., f/k/a EMI RESORTS MANAGEMENT S.A., a foreign corporation; EMI COFRESI DEVELOPMENTS, INC., a foreign corporation; KAHEBRAM, S.A., a foreign corporation; ELLIOTT MANAGEMENT INC, a/k/a EMI MANAGEMENT, INC., a foreign corporation; SUN VILLAGE JUAN DOLIO, INC., a foreign corporation; PROMOTORA XARA, S.A., a foreign corporation; ELLIOTT MICHES HOLDINGS, INC., a foreign corporation; INVERSIONES YUBASO, S.A., a foreign corporation; INMOBILIARIA LIRIOS DEL TROPICO, S.A., a foreign corporation; INMOBILIARIA CANADAIGUA, S.A., a foreign corporation; HSV HOLDINGS, S.A. , a foreign corporation; DESARROLLOS MIRADOR COFRESI, S.A., a foreign corporation; TENEDORA HSV [BP], S.A., a foreign corporation; VILLA SANTA PONCA, S.A., a foreign corporation; DCS DOMINICAN CONSTRUCTION SERVICES, S.A., a foreign corporation; ELLIOTT REGENT HOLDINGS, INC., a foreign corporation; ELLIOTT TOSCANA HOLDINGS, INC., a foreign corporation; LANDMARK LENDING CORPORATION, a foreign corporation; 408 CUMBERLAND HOLDINGS, INC., a foreign corporation; BERTUS MANAGEMENT, INC., a foreign corporation; ORANGEVILLE RESERVATION SERVICES, LTD., a California corporation; COFRESCO HOLDINGS, INC., a foreign corporation; CCW DOMINICANA, S.A., a foreign corporation; MPS LTD., S.A., a foreign corporation; COFRESI DEVELOPMENTS, INC., a foreign corporation; IMMOBILIARIA MONCEY, S.A., a foreign corporation; WWIN INTERNATIONAL, LTD., a foreign corporation; MELLESINO C. POR A., a foreign corporation; TENEDORA WESSEX DOMINICANA, S.A., a foreign corporation; SUN VILLAGE CONSTRUCCIONES, S.A., a foreign corporation; SUN VILLAGE JD HOLDING, INC., a Delaware corporation; 1211766 ALBERTA LTD., a foreign corporation; TRIPALMS REAL ESTATE INC., a foreign corporation; OCEAN PALMS REAL ESTATE (SVG) INC., a foreign corporation; CELLWAVE NETWORKS, LTD., a foreign corporation; ENRIQUE DE MARCHENA, an individual; and DE MARCHENA KALUCHE & ASOCIADOS, a foreign corporation preventing them from conveying, transferring, and/or

EXHIBIT A

encumbering in any other way, the Properties or assets of the Elliott Group Defendants (whether legally or beneficially owned or titled) to any third person or entity and from attempting to extinguish, terminate, or otherwise impair Plaintiffs' ownership interest in the timeshare and fractional interest properties, and such further relief as the Court deems just and equitable.

## COUNT IX
## EQUITABLE LIEN

231.     Plaintiffs reallege paragraphs 1 through 163 as if fully set forth herein.

232.     Plaintiffs provided the Elliot Group Defendants with a benefit in the form of a financial investment in the development, management, and operation of the resort properties.

233.     Plaintiffs directly contributed their investment to the improvement of the resort properties.

234.     The Elliot Group Defendants were aware of, and benefited from, the receipt of capital invested by Plaintiffs.

235.     The Elliot Group Defendants knew that Plaintiffs expected to be compensated for the capital they invested in the resort properties.

236.     However, the Elliot Group Defendants have not fully compensated Plaintiffs.

237.     Additionally, the Elliot Group Defendants failed to utilize the funds raised in the manner in which they represented they would do so.

238.     Under these circumstances, it is inequitable for the Elliot Group Defendants to retain the benefits without paying for them.

239.     As a result of the foregoing, the Elliot Group Defendants have been unjustly enriched to the detriment of Plaintiffs.

240.     Plaintiffs have no adequate remedy at law, as a monetary award would not be sufficient to fully compensate Plaintiffs for the time and money they invested in the Properties.

241.     Consequently, Plaintiffs are entitled to an equitable lien in the Properties in which they invested (whether directly or indirectly).

WHEREFORE, Plaintiffs demand judgment against FREDERICK ELLIOTT, an

EXHIBIT A

individual; DEREK ELLIOTT, an individual; EMI RESORTS, INC, a foreign corporation; EMI SUN VILLAGE, INC., a foreign corporation; EMI RESORTS MANAGEMENT (S.V.G.), INC., a foreign corporation; HSV HOTELES DE OPERADORA, S.A., f/k/a EMI RESORTS MANAGEMENT S.A., a foreign corporation; EMI COFRESI DEVELOPMENTS, INC., a foreign corporation; KAHEBRAM, S.A., a foreign corporation; ELLIOTT MANAGEMENT INC, a/k/a EMI MANAGEMENT, INC., a foreign corporation; SUN VILLAGE JUAN DOLIO, INC., a foreign corporation; PROMOTORA XARA, S.A., a foreign corporation; ELLIOTT MICHES HOLDINGS, INC., a foreign corporation; INVERSIONES YUBASO, S.A., a foreign corporation; INMOBILIARIA LIRIOS DEL TROPICO, S.A., a foreign corporation; INMOBILIARIA CANADAIGUA, S.A., a foreign corporation; HSV HOLDINGS, S.A. , a foreign corporation; DESARROLLOS MIRADOR COFRESI, S.A., a foreign corporation; TENEDORA HSV [BP], S.A., a foreign corporation; VILLA SANTA PONCA, S.A., a foreign corporation; DCS DOMINICAN CONSTRUCTION SERVICES, S.A., a foreign corporation; ELLIOTT REGENT HOLDINGS, INC., a foreign corporation; ELLIOTT TOSCANA HOLDINGS, INC., a foreign corporation; LANDMARK LENDING CORPORATION, a foreign corporation; 408 CUMBERLAND HOLDINGS, INC., a foreign corporation; BERTUS MANAGEMENT, INC., a foreign corporation; ORANGEVILLE RESERVATION SERVICES, LTD., a California corporation; COFRESCO HOLDINGS, INC., a foreign corporation; CCW DOMINICANA, S.A., a foreign corporation; MPS LTD., S.A., a foreign corporation; COFRESI DEVELOPMENTS, INC., a foreign corporation; IMMOBILIARIA MONCEY, S.A., a foreign corporation; WWIN INTERNATIONAL, LTD., a foreign corporation; MELLESINO C. POR A., a foreign corporation; TENEDORA WESSEX DOMINICANA, S.A., a foreign corporation; SUN VILLAGE CONSTRUCCIONES, S.A., a foreign corporation; SUN VILLAGE JD HOLDING, INC., a Delaware corporation; 1211766 ALBERTA LTD., a foreign corporation; TRIPALMS REAL ESTATE INC., a foreign corporation; OCEAN PALMS REAL ESTATE (SVG) INC., a foreign corporation; and CELLWAVE NETWORKS, LTD., a foreign corporation on the resort properties in which Plaintiffs invested capital, and such further relief as the Court

EXHIBIT A

deems just and equitable.

## COUNT X
## CONSTRUCTIVE TRUST

242.    Plaintiffs reallege paragraphs 1 through 163 as if fully set forth herein.

243.    Plaintiffs entered into an agreement with the Elliot Group Defendants, pursuant to which Plaintiffs provided the Elliot Group Defendants with a benefit in the form of a financial investment in, and a time commitment to, a real estate venture.

244.    Plaintiffs' investment was used (together with similarly diverted investments from others) to acquire personal and real property in the name of entities in which Plaintiffs had no interest or right to benefit.

245.    Plaintiffs placed a great degree of trust and confidence in the Elliot Group Defendants with respect to their business venture, and expected loyalty from them.

246.    The Elliot Group Defendants gained Plaintiffs' confidence and trust, but abused it.

247.    As a direct result of Plaintiffs' efforts and those of other purchasers, the Elliot Group Defendants acquired legal rights to the Juan Dolio Property, the Miches Property and other assets, utilizing the funds received from Plaintiffs and the other purchasers.

248.    The Elliot Group Defendants knew of, and benefited from, Plaintiffs' investment.

249.    The Elliot Group Defendants knew that Plaintiffs expected to be compensated for the capital and time they invested into the resort properties.

250.    However, the Elliot Group Defendants have not fully compensated Plaintiffs for their participation in the real estate venture.

251.    As a result of the foregoing, the Elliot Group Defendants have been unjustly enriched to the detriment of Plaintiffs.

252.    Under these circumstances, it is inequitable for the Elliot Group Defendants to retain or receive any benefits of or from the Juan Dolio Property, Miches Property and other assets acquired with purchasers' funds, at the expense of Plaintiffs.

EXHIBIT A

253.    Plaintiffs have no adequate remedy at law because a monetary award would not be sufficient to fully compensate Plaintiffs for their investment in the Properties.

254.    Consequently, Plaintiffs are entitled to a constructive trust on the Juan Dolio Property, Miches Property and other assets acquired with purchasers' funds.

WHEREFORE, Plaintiffs demand judgment against FREDERICK ELLIOTT, an individual; DEREK ELLIOTT, an individual; EMI RESORTS, INC, a foreign corporation; EMI SUN VILLAGE, INC., a foreign corporation; EMI RESORTS MANAGEMENT (S.V.G.), INC., a foreign corporation; HSV HOTELES DE OPERADORA, S.A., f/k/a EMI RESORTS MANAGEMENT S.A., a foreign corporation; EMI COFRESI DEVELOPMENTS, INC., a foreign corporation; KAHEBRAM, S.A., a foreign corporation; ELLIOTT MANAGEMENT INC, a/k/a EMI MANAGEMENT, INC., a foreign corporation; SUN VILLAGE JUAN DOLIO, INC., a foreign corporation; PROMOTORA XARA, S.A., a foreign corporation; ELLIOTT MICHES HOLDINGS, INC., a foreign corporation; INVERSIONES YUBASO, S.A., a foreign corporation; INMOBILIARIA LIRIOS DEL TROPICO, S.A., a foreign corporation; INMOBILIARIA CANADAIGUA, S.A., a foreign corporation; HSV HOLDINGS, S.A. , a foreign corporation; DESARROLLOS MIRADOR COFRESI, S.A., a foreign corporation; TENEDORA HSV [BP], S.A., a foreign corporation; VILLA SANTA PONCA, S.A., a foreign corporation; DCS DOMINICAN CONSTRUCTION SERVICES, S.A., a foreign corporation; ELLIOTT REGENT HOLDINGS, INC., a foreign corporation; ELLIOTT TOSCANA HOLDINGS, INC., a foreign corporation; LANDMARK LENDING CORPORATION, a foreign corporation; 408 CUMBERLAND HOLDINGS, INC., a foreign corporation; BERTUS MANAGEMENT, INC., a foreign corporation; ORANGEVILLE RESERVATION SERVICES, LTD., a California corporation; COFRESCO HOLDINGS, INC., a foreign corporation; CCW DOMINICANA, S.A., a foreign corporation; MPS LTD., S.A., a foreign corporation; COFRESI DEVELOPMENTS, INC., a foreign corporation; IMMOBILIARIA MONCEY, S.A., a foreign corporation; WWIN INTERNATIONAL, LTD., a foreign corporation; MELLESINO C. POR A., a foreign corporation; TENEDORA WESSEX DOMINICANA, S.A., a foreign corporation;

EXHIBIT A

SUN VILLAGE CONSTRUCCIONES, S.A., a foreign corporation; SUN VILLAGE JD HOLDING, INC., a Delaware corporation; 1211766 ALBERTA LTD., a foreign corporation; TRIPALMS REAL ESTATE INC., a foreign corporation; OCEAN PALMS REAL ESTATE (SVG) INC., a foreign corporation; and CELLWAVE NETWORKS, LTD., a foreign corporation acting as a trustee for the Juan Dolio Property, Miches Property and other assets acquired with purchasers' funds, and such further relief as the Court deems just and equitable.

**COUNT XI**
**ACCOUNTING**

255.    Plaintiffs reallege paragraphs 1 through 163 as if fully set forth herein.

256.    Plaintiffs agreed to purchase timeshare and fractional ownership interests in the real estate developments in the Dominican Republic as a direct result of the Elliot Group Defendants' representations that monies raised from the sale of such interests would be utilized for the acquisition, development, and management of the Sun Village Resort and Juan Dolio Project.

257.    Plaintiffs invested their capital into the timeshare and fractional ownership interests in the Sun Village Resort and Juan Dolio Project in exchange for the Elliot Group Defendants' assurance that the properties would be operated and managed in a commercially reasonable manner.

258.    Plaintiffs, by reason of their entitlement to NUF and other benefits from his ownership in the timeshare and fractional ownership interests, had the right to expect that the Elliot Group Defendants would not engage in inappropriate business transactions, self-dealing, and/or diversion of funds from the operation of the Sun Village Resort and Juan Dolio Project.

259.    Upon information and belief the Elliot Group Defendants breached this promise, and, in turn, their duties to Plaintiffs, by diverting funds for the personal use and benefit of the Elliott Group Defendants, including, but not limited to, paying for Frederick and Derek's participation and investment in Hollywood films, paying for television programs promoting Frederick and Derek  (to the exclusion of the properties), gambling trips to Las Vegas and other

EXHIBIT A

locations for Frederick and Derek, and payment of other expenses not directly related to the development, management, and operation of the Sun Village Resort and Juan Dolio Project.

260.     The Elliot Group Defendants have taken affirmative steps to conceal and secret such misconduct from Plaintiffs and the other owners of timeshare and fractional ownership interests throughout the United States.

261.     The Elliot Group Defendants have never provided any accounting to Plaintiffs as related to the earning of NUF, as to the proper apportionment of NUF fees as between the Elliot Group Defendants and Plaintiffs and other owners, and as to whether improper payments or expenditures in any way reduced the NUF or other payments due to Plaintiffs and the other owners.

262.     Plaintiffs have no adequate remedy at law, as the true financial status of the Sun Village Resort and Juan Dolio Project is unknown.

WHEREFORE, Plaintiffs demand an accounting of all profits, monies received, income, expenses and other monies spent or disbursed related to the Sun Village Resort and Juan Dolio Project, and such further relief as the Court deems just and equitable.

## COUNT XII
## PROMISSORY ESTOPPEL

263.     Plaintiffs reallege paragraphs 1 through 163 as if fully set forth herein.

264.     The Elliot Group Defendants repeatedly represented to Plaintiffs that the promissory notes executed in connection with the acquisition of the Passport would not be due y until the Juan Dolio hotel was completed and officially re-opened.

265.     The Elliot Group Defendants have failed to honor this representation.

266.     The Elliot Group Defendants knew or could reasonably foresee that this promise would induce reliance on Plaintiffs' part.

267.     Plaintiffs, acting in reasonable reliance on the Elliot Group Defendants' representations, incurred a substantial detriment in the form of placing their 50% deposit at risk, and incurring an obligation to pay monies pursuant to a note.

EXHIBIT A

268.    The Elliot Group Defendants' promises to Plaintiffs are binding, and injustice can only be avoided by enforcement of those promises.

269.    Plaintiffs would not have closed upon the acquisition of the Passport or executed the notes, but for the Elliot Group Defendants' representations.

WHEREFORE, Plaintiffs demand judgment against FREDERICK ELLIOTT, an individual; DEREK ELLIOTT, an individual; EMI RESORTS, INC, a foreign corporation; EMI SUN VILLAGE, INC., a foreign corporation; EMI RESORTS MANAGEMENT (S.V.G.), INC., a foreign corporation; HSV HOTELES DE OPERADORA, S.A., f/k/a EMI RESORTS MANAGEMENT S.A., a foreign corporation; EMI COFRESI DEVELOPMENTS, INC., a foreign corporation; KAHEBRAM, S.A., a foreign corporation; ELLIOTT MANAGEMENT INC, a/k/a EMI MANAGEMENT, INC., a foreign corporation; SUN VILLAGE JUAN DOLIO, INC., a foreign corporation; PROMOTORA XARA, S.A., a foreign corporation; ELLIOTT MICHES HOLDINGS, INC., a foreign corporation; INVERSIONES YUBASO, S.A., a foreign corporation; INMOBILIARIA LIRIOS DEL TROPICO, S.A., a foreign corporation; INMOBILIARIA CANADAIGUA, S.A., a foreign corporation; HSV HOLDINGS, S.A. , a foreign corporation; DESARROLLOS MIRADOR COFRESI, S.A., a foreign corporation; TENEDORA HSV [BP], S.A., a foreign corporation; VILLA SANTA PONCA, S.A., a foreign corporation; DCS DOMINICAN CONSTRUCTION SERVICES, S.A., a foreign corporation; ELLIOTT REGENT HOLDINGS, INC., a foreign corporation; ELLIOTT TOSCANA HOLDINGS, INC., a foreign corporation; LANDMARK LENDING CORPORATION, a foreign corporation; 408 CUMBERLAND HOLDINGS, INC., a foreign corporation; BERTUS MANAGEMENT, INC., a foreign corporation; ORANGEVILLE RESERVATION SERVICES, LTD., a California corporation; COFRESCO HOLDINGS, INC., a foreign corporation; CCW DOMINICANA, S.A., a foreign corporation; MPS LTD., S.A., a foreign corporation; COFRESI DEVELOPMENTS, INC., a foreign corporation; IMMOBILIARIA MONCEY, S.A., a foreign corporation; WWIN INTERNATIONAL, LTD., a foreign corporation; MELLESINO C. POR A., a foreign corporation; TENEDORA WESSEX DOMINICANA, S.A., a foreign corporation;

EXHIBIT A

SUN VILLAGE CONSTRUCCIONES, S.A., a foreign corporation; SUN VILLAGE JD HOLDING, INC., a Delaware corporation; 1211766 ALBERTA LTD., a foreign corporation; TRIPALMS REAL ESTATE INC., a foreign corporation; OCEAN PALMS REAL ESTATE (SVG) INC., a foreign corporation; and CELLWAVE NETWORKS, LTD., a foreign corporation for damages, and such further relief as the Court deems just and equitable.

### COUNT XIII
### INJUNCTIVE RELIEF (AVIATI)

270.    Plaintiffs reallege paragraphs 1 through 163 as if fully set forth herein.

271.    Plaintiffs are entitled to injunctive relief to prevent Aviati from taking any actions or steps to extinguish, terminate, or otherwise impair Plaintiffs' ownership interests in the timeshare and fractional interest properties in violation of the parties' agreements.

272.    Plaintiffs have a clear, enforceable interest in the Passport fractional real estate ownership interests.

273.    Specifically, Plaintiffs agreed to close upon the acquisition of the Passport and execution of promissory notes for the remaining balance of the purchase price upon the Elliott Group Defendants' express representation that the Juan Dolio Project would be promptly completed and that the payments on the notes would not be due until the completion and re-opening of the Juan Dolio Project.

274.    To date, the redevelopment of the Juan Dolio Project has not been completed, and the hotel has not officially re-opened.

275.    Despite this, Aviati, as assignee of the notes, has declared the notes due and owing.

276.    Further, Aviati is threatening to take actions or steps to extinguish, terminate, or otherwise impair Plaintiffs' ownership interests.

277.    Plaintiffs performed their side of the agreement.

278.    Plaintiffs are likely to succeed on the merits in his claim against Aviati.

279.    Plaintiffs will suffer irreparable harm should Aviati be able to extinguish,

EXHIBIT A

terminate, or otherwise impair Plaintiffs' ownership interest in the timeshare and fractional interest properties.  Because real property is unique, and Plaintiffs' interest is likewise unique, retention of the resort properties and maintenance of the status quo as to his ownership rights is the only way that Plaintiffs can secure their rights.

280.    A monetary award is insufficient to fully compensate Plaintiffs.

281.    Preventing Aviati from attempting to extinguish, terminate, or otherwise impair Plaintiffs' ownership interest in the timeshare and fractional interest properties will serve the public interest because it will hold the Elliot Group Defendants, and Aviati  as their successor in interest, to their promise not to call the notes due until the Juan Dolio Project was completed and officially re-opened.

282.    No harm to Aviati will be done by the injunction, as they will be required to perform their side of the contract.

WHEREFORE, Plaintiffs demand an injunction against Defendant, INVERSIONES AVIATI, S.A., a foreign corporation, preventing it from attempting to extinguish, terminate, or otherwise impair plaintiffs' ownership interest in the timeshare and fractional interest properties, and such further relief as the Court deems just and equitable.

**COUNT XIV**
**CIVIL CONSPIRACY**

283.    Plaintiffs reallege paragraphs 1 through 63 as if fully set forth herein.

284.    The Elliot Group Defendants and Aviati entered into an express or implied agreement among themselves to achieve one common purpose – to deprive Plaintiffs of their interest in the Passport and the proceeds and benefits from such ownership.

285.    In pursuit of this conspiracy, the Elliot Group Defendants and Aviati, without Plaintiffs' knowledge and authorization, transferred the ownership of the note Plaintiffs executed, to which transfer Defendants have admitted.

286.    These wrongful acts by the Elliot Group Defendants, constituted a conspiracy to commit a tort against Plaintiffs and breach their obligations to Plaintiffs.

EXHIBIT A

287.    As a result of the Elliot Group Defendants and Aviati's conspiracy and their acts in furtherance of the conspiracy, Plaintiffs suffered damages in an amount to be determined at trial.

WHEREFORE, Plaintiffs demand judgment against FREDERICK ELLIOTT, an individual; DEREK ELLIOTT, an individual; EMI RESORTS, INC, a foreign corporation; EMI SUN VILLAGE, INC., a foreign corporation; EMI RESORTS MANAGEMENT (S.V.G.), INC., a foreign corporation; HSV HOTELES DE OPERADORA, S.A., f/k/a EMI RESORTS MANAGEMENT S.A., a foreign corporation; EMI COFRESI DEVELOPMENTS, INC., a foreign corporation; KAHEBRAM, S.A., a foreign corporation; ELLIOTT MANAGEMENT INC, a/k/a EMI MANAGEMENT, INC., a foreign corporation; SUN VILLAGE JUAN DOLIO, INC., a foreign corporation; PROMOTORA XARA, S.A., a foreign corporation; ELLIOTT MICHES HOLDINGS, INC., a foreign corporation; INVERSIONES YUBASO, S.A., a foreign corporation; INMOBILIARIA LIRIOS DEL TROPICO, S.A., a foreign corporation; INMOBILIARIA CANADAIGUA, S.A., a foreign corporation; HSV HOLDINGS, S.A. , a foreign corporation; DESARROLLOS MIRADOR COFRESI, S.A., a foreign corporation; TENEDORA HSV [BP], S.A., a foreign corporation; VILLA SANTA PONCA, S.A., a foreign corporation; DCS DOMINICAN CONSTRUCTION SERVICES, S.A., a foreign corporation; ELLIOTT REGENT HOLDINGS, INC., a foreign corporation; ELLIOTT TOSCANA HOLDINGS, INC., a foreign corporation; LANDMARK LENDING CORPORATION, a foreign corporation; 408 CUMBERLAND HOLDINGS, INC., a foreign corporation; BERTUS MANAGEMENT, INC., a foreign corporation; ORANGEVILLE RESERVATION SERVICES, LTD., a California corporation; COFRESCO HOLDINGS, INC., a foreign corporation; CCW DOMINICANA, S.A., a foreign corporation; MPS LTD., S.A., a foreign corporation; COFRESI DEVELOPMENTS, INC., a foreign corporation; IMMOBILIARIA MONCEY, S.A., a foreign corporation; WWIN INTERNATIONAL, LTD., a foreign corporation; MELLESINO C. POR A., a foreign corporation; TENEDORA WESSEX DOMINICANA, S.A., a foreign corporation; SUN VILLAGE CONSTRUCCIONES, S.A., a foreign corporation; SUN VILLAGE JD

EXHIBIT A

HOLDING, INC., a Delaware corporation; 1211766 ALBERTA LTD., a foreign corporation; TRIPALMS REAL ESTATE INC., a foreign corporation; OCEAN PALMS REAL ESTATE (SVG) INC., a foreign corporation; CELLWAVE NETWORKS, LTD., a foreign corporation and INVERSIONES AVIATI, S.A., a foreign corporation, for damages and such further relief as the Court deems just and equitable.

### COUNT XV
### FALSE AND MISLEADING ADVERTISING

288.    Plaintiffs reallege paragraphs 1 through 163 as if fully set forth herein.

289.    The Elliott Group Defendants made material and significant representations through its advertising about the timeshare and fractional ownership real estate products to Plaintiffs to induce their purchase, as outlined more particularly in paragraphs 119-151 above. These representations were designed to induce Plaintiffs' reliance on the representations and Plaintiffs did personally rely to their detriment on these representations.

290.    The falsity of the Elliott Group Defendants' representations has damaged Plaintiffs since they are not getting the benefit of their bargain and have had to incur costs and expenses as a consequence of these false representations.

WHEREFORE, Plaintiffs demand judgment against FREDERICK ELLIOTT, an individual; DEREK ELLIOTT, an individual; EMI RESORTS, INC, a foreign corporation; EMI SUN VILLAGE, INC., a foreign corporation; EMI RESORTS MANAGEMENT (S.V.G.), INC., a foreign corporation; HSV HOTELES DE OPERADORA, S.A., f/k/a EMI RESORTS MANAGEMENT S.A., a foreign corporation; EMI COFRESI DEVELOPMENTS, INC., a foreign corporation; KAHEBRAM, S.A., a foreign corporation; ELLIOTT MANAGEMENT INC, a/k/a EMI MANAGEMENT, INC., a foreign corporation; SUN VILLAGE JUAN DOLIO, INC., a foreign corporation; PROMOTORA XARA, S.A., a foreign corporation; ELLIOTT MICHES HOLDINGS, INC., a foreign corporation; INVERSIONES YUBASO, S.A., a foreign corporation; INMOBILIARIA LIRIOS DEL TROPICO, S.A., a foreign corporation; INMOBILIARIA CANADAIGUA, S.A., a foreign corporation; HSV HOLDINGS, S.A. , a

EXHIBIT A

foreign corporation; DESARROLLOS MIRADOR COFRESI, S.A., a foreign corporation; TENEDORA HSV [BP], S.A., a foreign corporation; VILLA SANTA PONCA, S.A., a foreign corporation; DCS DOMINICAN CONSTRUCTION SERVICES, S.A., a foreign corporation; ELLIOTT REGENT HOLDINGS, INC., a foreign corporation; ELLIOTT TOSCANA HOLDINGS, INC., a foreign corporation; LANDMARK LENDING CORPORATION, a foreign corporation; 408 CUMBERLAND HOLDINGS, INC., a foreign corporation; BERTUS MANAGEMENT, INC., a foreign corporation; ORANGEVILLE RESERVATION SERVICES, LTD., a California corporation; COFRESCO HOLDINGS, INC., a foreign corporation; CCW DOMINICANA, S.A., a foreign corporation; MPS LTD., S.A., a foreign corporation; COFRESI DEVELOPMENTS, INC., a foreign corporation; IMMOBILIARIA MONCEY, S.A., a foreign corporation; WWIN INTERNATIONAL, LTD., a foreign corporation; MELLESINO C. POR A., a foreign corporation; TENEDORA WESSEX DOMINICANA, S.A., a foreign corporation; SUN VILLAGE CONSTRUCCIONES, S.A., a foreign corporation; SUN VILLAGE JD HOLDING, INC., a Delaware corporation; 1211766 ALBERTA LTD., a foreign corporation; TRIPALMS REAL ESTATE INC., a foreign corporation; OCEAN PALMS REAL ESTATE (SVG) INC., a foreign corporation; and CELLWAVE NETWORKS, LTD., a foreign corporation, for damages pursuant to Florida Statute § 817.41, together with an award of reasonable attorneys fees and costs, and such further relief as the Court deems just and equitable.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury for all matters so triable.

Dated: _____, 2010

EXHIBIT A

Case No. 09-20526-CIV-GOLD/MCALILEY

Respectfully submitted,

_____

**ARNSTEIN & LEHR LLP**
Hilda Piloto
Florida Bar No 0154120
200 South Biscayne Boulevard
Suite 3600
Miami, FL  33131-2395
Telephone:      (305) 374-3330
Facsimile:      (305) 808-8625
E-Mail:          hpiloto@arnstein.com

*Counsel for Plaintiffs*

EXHIBIT A